WARNER, Judge.
Browning-Ferris Industries (BFI) appeals the trial court’s order dissolving a temporary injunction entered in its favor enforcing a noncompete clause between appellee, Man-zella, and Industrial Waste Service, Inc. (IWS), whose parent company, Attwoods pic (Attwoods), was acquired by BFI. The non-compete agreement was part of the sale of assets of Manzella’s business, Seacoast Sanitation (Seacoast), to IWS. The trial court dissolved the injunction based upon a settlement agreement between BFI and the State of Florida in a federal lawsuit in which BFI agreed not to enforce noncompete clauses entered into between Attwoods and its employees. We hold that the federal settlement did not affect the noncompete agreement executed as consideration for the sale of Seacoast’s assets, and reverse.
IWS purchased Seacoast’s assets in January of 1994 for $2.75 million. Seacoast was owned by Manzella and engaged in waste *111 management services. At the time, IWS was a division of Attwoods. As part of the asset purchase agreement, Manzella agreed to execute a noncompete agreement. The noncom-pete agreement provided that it was an essential factor in IWS’s decision to purchase Seacoast’s assets. In the agreement, Man-zella agreed that for a period of five years, he would not, directly or indirectly, in any manner or capacity, engage in the waste business within Dade, Broward, and Palm Beach Counties. The agreement was also assignable to any entity affiliated with IWS.
The sales agreement contemplated the continued employment of Manzella with IWS, as it provided that the execution of an employment agreement between Manzella and Attwoods was a condition precedent to closing of the transaction. The employment agreement, executed at the same time as the asset purchase agreement and the noncom-pete agreement, provided that Manzella would be employed by Attwoods for a period of one year for a substantial salary. It also provided that Manzella would be bound by the terms of a Confidentiality and Non-Competition Agreement, which required that Manzella refrain from engaging in similar employment for a period of one year from the date of termination from Attwoods’ employment. The employment agreement specifically provided that the terms of the non-compete agreement “shall run concurrent and be cumulative with those certain representations, covenants, conditions and warranties made by Employee in, or by virtue of, the Asset Purchase Agreement and any exhibits thereto.”
In late 1994, Attwoods and IWS were taken over by BFI. BFI did not continue Man-zella’s employment with Attwoods, and Man-zella went to work for Waste-X Services, Inc., a Dade County corporation which was in competition with BFI. In June of 1996, BFI became aware of Manzella’s employment and brought suit to enforce the noncompete agreement entered into as part of the sale of Seaeoast’s assets to IWS.
Manzella argued against the original motion for temporary injunction by claiming that no legitimate interest was served by enforcing the noncompete agreement because he was not engaged in direct solicitation of customers. Furthermore, while the noncompete agreement was assignable, the parties had not contemplated a hostile takeover of IWS by BFI. This made a difference to Manzella because he had a year-to-year employment contract with Attwoods which would have continued but for the BFI takeover. As support for his contention that the noncompete agreement would serve no useful purpose, he presented the court with a final judgment in a federal court suit between BFI and the states of Maryland and Florida in which the federal court found that the BFI takeover of Attwoods was “anti-competitive.” Despite Manzella’s arguments, the trial court granted the temporary injunction enforcing the noncompete clause.
Three weeks later, Manzella moved to dissolve the injunction. He argued that BFI, on behalf of all of its subsidiaries, had entered into a settlement agreement in the federal suit on December 1, 1994, with the State of Florida in which BFI agreed that it would not enforce noncompete clauses entered into between Attwoods and its employees once the employee had ceased receiving compensation from BFI or Attwoods. Man-zella alleged that he was an Attwoods employee before BFI’s takeover and had ceased receiving compensation from BFI and Att-woods. In light of the settlement agreement, he claimed that the injunction was unreasonable and its purpose was simply to eliminate competition. Finding that the purpose of the federal settlement was to ensure that the takeover of Attwoods by BFI did not restrict competition, and that Manzella was an intended beneficiary of the settlement agreement, the trial court dissolved the injunction, precipitating this appeal.
In Operation Rescue v. Women’s Health Ctr., Inc., 626 So.2d 664, 670 (Fla.1993), rev’d. in part on other grounds by Madsen v. Women’s Health Ctr., Inc., 512 U.S. 753, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994), our supreme court held that to the extent an injunction is based on factual matters, an order imposing a permanent injunction lies within the sound discretion of the trial court and will be affirmed absent a showing of abuse of discretion. However, to the extent that the *112 order rests on purely legal matters, an order imposing an injunction is subject to de novo review on appeal. Id. The same standard of review should apply to motions dissolving an injunction.
In the instant case, we are dealing with an issue of law, namely the construction of the various contracts and the effect of the settlement agreement between the State of Florida and BFI on Manzella’s noncompete agreement. In dissolving the injunction, the trial court found that the settlement agreement intended to prevent a restriction of competition as a result of the takeover.
Manzella executed two different noncom-pete agreements. The first was between Manzella and IWS and provided for a five year noncompete period as an essential consideration of the sale between Seaeoast, owned by Manzella, and IWS. The second noncompete agreement was between Att-woods and Manzella for one year. The employment agreement between the parties acknowledged that the one-year noncompete agreement ran concurrently with the asset purchase noncompete agreement and was cumulative of its terms and provisions. Thus, the parties recognized that there were two distinct noncompete agreements between themselves and that while they might run concurrently for the year’s term of the employment agreement, they were separate and independent of each other. The asset purchase noncompete agreement did not depend on employment but instead was part of the purchase of the goodwill of Manzella’s business.
The settlement agreement between the State of Florida and BFI included a provision in which BFI agreed not to enforce noncompete clauses entered into between Attwoods and its employees once the employee had ceased receiving compensation from BFI or Attwoods. We would agree with the trial court that if BFI were attempting to enforce the employment agreement and its noncompete clause, there would be grounds to deny the temporary injunction.
However, BFI was attempting to enforce the noncompete agreement which its subsidiary had purchased and paid handsomely for in connection with the sale of assets of Seacoast. The asset sale noncompete agreement was for a period of five years. Obviously, the purpose of such an agreement was to protect the value of the business just purchased from the potential loss of value if the selling owner decided to reestablish a competing business and drain customers away. If such an anti-competitive agreement is ancillary to the sale of a business, it does not ■necessarily violate antitrust laws. See Lektro-Vend Corp. v. Vendo Corp., 500 F.Supp. 332 (N.D.Ill.1980), aff'd, 660 F.2d 255 (7th Cir.1981).
The apparent purpose of the settlement agreement was to resolve antitrust concerns associated with BFI’s takeover of Attwoods, IWS’s parent. The final judgment and settlement agreement required BFI to divest itself of certain contracts and operations that had belonged to Attwoods before the takeover. None of these involved IWS or contracts in South Florida. The provision in the BFI agreement with the State of Florida not to enforce the employee noncompete agreements permitted these former employees to work for competing firms. Neither the purpose of the settlement agreement nor its language justifies a finding that the settlement agreement was intended to prevent the enforcement of the asset sale noncompete agreement entered into between Manzella and IWS where IWS was not involved in the antitrust settlement or consent judgment. We therefore reverse the order dissolving the injunction.
Because we resolve this on the question of law of the interpretation of the various agreements, we do not address whether the agreement is contrary to the public interest. The only argument submitted to the court on that ground applied to the settlement agreement between BFI and the State of Florida which we have determined did not apply to the asset purchase noncompete agreement. This may be the subject of further proceedings in the trial court.
FARMER and PARIENTE, JJ., concur.