758 So.2d 705 (2000)
Abraham WEINSTEIN a/k/a Abe Weinstein and Chava Weinstein, Appellant,
v.
Yoram AISENBERG, Appellee.
No. 4D99-0279.
District Court of Appeal of Florida, Fourth District.
March 9, 2000.
*706 Louise H. McMurray, Miami, and Stephens, Lynn, Klein & McNicholas, P.A., Fort Lauderdale, for appellant.
Victor K. Rones of Margulies and Rones, P.A., North Miami, and Kris E. Penzell, Miami, for appellee.
PER CURIAM.
Appellants, Abraham and Chava Weinstein, appeal a non-final order temporarily enjoining their withdrawal of funds at two nonparty banks. The injunction was entered soon after the appellee, Yoram Aisenberg, filed a verified complaint against the Weinsteins for conversion, injunctive relief, and unjust enrichment. We reverse.
Appellant, Abraham Weinstein, and appellee, Yoram Aisenberg, are business partners and shareholders in a foreign corporation known as "Nitro Plastic Technologies Ltd." The corporation maintained a bank account at the Union Bank of Israel, on which both Weinstein and Aisenberg were authorized signers. Aisenberg filed a verified complaint against Weinstein and his wife, Chava, alleging that the Weinsteins withdrew $760,000 from the corporate account without Aisenberg's authorization by forging Aisenberg's signature on the withdrawal authorization form. Aisenberg further alleged that Chava Weinstein deposited the money in newly-opened bank accounts at Nationsbank, N.A. and Washington Mutual Bank. The lower court entered an ex parte injunction prohibiting the two banks from allowing withdrawal of those monies. The Weinsteins appeal the injunction, arguing that the complaint failed to state a cause of action for injunctive relief in that it did not set forth a showing of irreparable harm, a clear legal right, an inadequate remedy at law, or that an injunction would serve the public interest. Additionally, appellants contend that the order imposing the injunction failed to comply with the requirements of Florida Rule of Civil Procedure 1.610 in that it did not make the necessary findings to support an order imposing an injunction and was not endorsed with the date and time it was granted.
An order granting injunctive relief lies within the sound discretion of the trial court and will be affirmed absent an abuse of discretion. Precision Tune Auto Care, Inc. v. Radcliff, 731 So.2d 744 (Fla. 4th DCA 1999); Browning-Ferris Indus. of Florida, Inc. v. Manzella, 694 So.2d 110, 112 (Fla. 4th DCA 1997). A party seeking temporary injunctive relief must demonstrate: (1)irreparable harm; (2) a clear legal right; (3) an inadequate remedy at law; and (4) that the public interest will be served. Oxford Int'l Bank and Trust, Ltd. v. Merrill, Lynch, etc., 374 So.2d 54 (Fla. 3d DCA 1979); Islandia Condominium, Inc. v. Vermut, 438 So.2d 89 (Fla. 4th DCA 1983); Contemporary Interiors v. Four Marks, Inc., 384 So.2d 734 (Fla. 4th DCA 1980). We agree with appellants that the appellee failed to meet the requirements for issuance of a temporary injunction to prevent them from withdrawing funds from the subject banks. The appellee has an adequate remedy at law, i.e., money damages. A claim for money damages does not provide a sufficient basis for injunctive relief. Hiles v. Auto Bahn Fed'n Inc., 498 So.2d 997 (Fla. 4th DCA 1986). Even where the party seeking injunctive relief alleges that the opposing party may dissipate bank assets, a judgment for money damages is adequate and injunctive relief is improper, notwithstanding the possibility that a money judgment will be uncollectible. Id. at 999.
In Lopez-Ortiz v. Centrust Sav. Bank, 546 So.2d 1126 (Fla. 3d DCA 1989), the trial court granted an ex parte injunction upon the filing by Centrust Bank of a one-count complaint alleging that Ortiz had converted funds while employed by the *707 bank. On appeal, the court reversed the injunction freezing Ortiz's bank account and safe deposit box, because the bank had an adequate remedy at lawmoney damages for conversion. "An action at law does not become an equitable action simply because a request for an injunction has been made." Id. at 1127. Similarly, in Digaeteno v. Perotti, 374 So.2d 1015 (Fla. 3d DCA 1979), which was followed by this court in Cannon v. Danziger, 454 So.2d 59 (Fla. 4th DCA 1984), the court held that the trial court erred in enjoining the defendants in a suit for conversion and fraud from removing assets, since the plaintiffs had an adequate remedy at law in the form of money damages.
The order granting the temporary injunction must be reversed because the complaint failed to show lack of an adequate remedy at law justifying issuance of an injunction. We need not, therefore, determine whether the order complied with Rule 1.610. We agree, however, with Judge Gross' concurring opinion concerning the "no adequate remedy at law" requirement for temporary injunctions in cases like this one. Accordingly, we certify the following question to the Florida Supreme Court as one of great public importance:

INCIDENT TO AN ACTION FOR CONVERSION, MAY A TRIAL COURT ISSUE AN INJUNCTION TO FREEZE ASSETS OF A DEFENDANT, WHERE THE PLAINTIFF HAS DEMONSTRATED: (1) THAT THE DEFENDANT WILL TRANSFER, DISSIPATE, OR HIDE HIS/ HER ASSETS SO AS TO RENDER A TRIAL JUDGMENT UNENFORCEABLE; (2) A CLEAR LEGAL RIGHT TO THE RELIEF REQUESTED; (3) A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS, AND (4) THAT A TEMPORARY INJUNCTION WILL SERVE THE PUBLIC INTEREST?
REVERSED.
KLEIN and TAYLOR, JJ., concur.
GROSS, J., concurs specially with opinion.
GROSS, J., concurring specially.
The majority opinion has reached the correct result, based on an abundance of authority. The holding harmonizes with legal precepts that had their beginnings in the fourteenth century. However, at the beginning of a new century, Florida should reexamine these principles and enable the trial judge to fashion a remedy that does justice in this case.
Aisenberg's complaint alleged that Abe Weinstein, "by the artful use of a copy and facsimile machine," caused the "wrongful withdrawal of $760,000.00" from a business account. The complaint also alleged that there was a "substantial likelihood that the Defendants will abscond with whatever monies are not restrained" and "that there is a great likelihood that the Defendants will be candidates for flight to a foreign jurisdiction." In his brief, Aisenberg emphasizes that without an injunction, he will be left with an empty "piece of paper entitled judgment."
Aisenberg's complaint contained three counts. The count for injunctive relief sought to freeze the Weinsteins' bank accounts. The counts for conversion and unjust enrichment were both actions at law. See Commerce Partnership 8098 Ltd. v. Equity Contracting Co., Inc., 695 So.2d 383, 386-87 (Fla. 4th DCA 1997); In re Estate of Corbin, 391 So.2d 731, 732 n. 1 (Fla. 3d DCA 1980). Aisenberg did not pursue the relief available under the prejudgment garnishment statute, section 77.031, Florida Statutes (1999). Nor did Aisenberg seek an injunction incident to an action to impose a constructive trust on the bank accounts. See Castillo v. Vlaminck de Castillo, 701 So.2d 1198, 1199 (Fla. 3d DCA 1997); Korn v. Ambassador Homes, Inc., 546 So.2d 756, 757 (Fla. 3d DCA 1989); see generally, Quinn v. Phipps, 93 Fla. 805, 113 So. 419 (1927); *708 Staples v. Battisti, 191 So.2d 583, 585 (Fla. 3d DCA 1966).
Many district court of appeal cases have held that a court may not grant the equitable relief of an injunction incident to an action at law, such as conversion. See St. Lawrence Co., N.V. v. Alkow Realty, Inc., 453 So.2d 514, 515 (Fla. 4th DCA 1984); Lopez-Ortiz v. Centrust Sav. Bank, 546 So.2d 1126, 1127 (Fla. 3d DCA 1989); Digaeteno v. Perotti, 374 So.2d 1015, 1016 (Fla. 3d DCA 1979). The locution appearing in the older cases is that an action for equitable relief, such as an injunction, cannot be maintained unless it falls "`within some acknowledged head of equity jurisprudence.'" Action Elec. & Repair, Inc. v. Batelli, 416 So.2d 888, 889 (Fla. 4th DCA 1982) (quoting Acquafredda v. Messina, 408 So.2d 828, 829 (Fla. 5th DCA 1982) (quoting B.L.E. Realty Corp. v. Mary Williams Co., 101 Fla. 254, 134 So. 47, 50 (1931))).
Many cases explain this rule by focusing on the absence of two of the elements that a plaintiff must establish in order to obtain injunctive relief. Numerous cases have held that a party seeking an injunction in Florida "must demonstrate: 1) irreparable harm; 2) a clear legal right; 3) an inadequate remedy at law; [and] 4) consideration of the public interest." Hiles v. Auto Bahn Fed'n, Inc., 498 So.2d 997, 998 (Fla. 4th DCA 1986) (citation omitted).
In Hiles, we explained that the "loss of money from a corporate bank account does not constitute irreparable harm because the loss can be compensated for by money damages." 498 So.2d at 998 (citing Goldberger v. Regency Highland Condominium Ass'n, 383 So.2d 1173 (Fla. 4th DCA 1980)); see Digaeteno, 374 So.2d at 1016; Adjmi v. Pankonin, 126 So.2d 153, 155 (Fla. 3d DCA 1961).
Other cases denying injunctive relief incident to actions at law emphasize that the availability of a money judgment provides an adequate remedy at law. See Oxford Int'l Bank & Trust, Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 374 So.2d 54, 56 (Fla. 3d DCA 1979); Adjmi, 126 So.2d at 155. The test of the "inadequacy of [a] remedy at law is whether a judgment can be obtained, not whether, once obtained, it will be collectible." Mary Dee's, Inc. v. Tartamella, 492 So.2d 815, 816 (Fla. 4th DCA 1986) (citing St. Lawrence, 453 So.2d at 514).
Florida cases often discuss irreparable harm and the inadequacy of a remedy at law as if they were distinct concepts. However, Florida's application of the irreparable injury rule is consistent with Professor Laycock's observation that
[t]he irreparable injury rule has two formulations. Equity will act only to prevent irreparable injury, and equity will act only if there is no adequate legal remedy. The two formulations are equivalent; what makes an injury irreparable is that no other remedy can repair it. Attempts to distinguish the two formulations have produced no common usage.
Douglas Laycock, The Death of the Irreparable Injury Rule, 103 HARV. L. REV. 687, 694 (1990) (footnotes omitted).
The district court of appeal cases derive from Florida Supreme Court cases which predate the 1967 merger of the law and equity courts.[1]See Ramsey v. Lovett, 89 So.2d 669 (Fla.1956) (determining equity jurisdiction); West v. Shirley, 69 So.2d 182 (Fla.1953); Stewart v. Manget, 132 Fla. 498, 181 So. 370 (1938) (citing B.L.E. Realty Corp. v. Mary Williams Co., 101 Fla. 254, 134 So. 47 (1931)); Tampa & G.C.R. *709 Co. v. Mulhern, 73 Fla. 146, 74 So. 297 (1917).
For example, in Ramsey, the plaintiffs filed a bill of complaint in equity claiming that the "plaintiffs had been damaged by defendants having fraudulently misrepresented material facts regarding lands and improvements sold by defendants to plaintiffs." 89 So.2d at 669. The plaintiffs alleged that the defendants were either out of the state or concealing themselves and that they had sold all of their property, except "one parcel of real estate which they were attempting to sell." Id. The plaintiffs contended that they had no adequate remedy at law, because if the defendants sold their parcel of land, they would have no assets in the state upon which the plaintiffs could levy to satisfy a judgment for damages. The plaintiffs sought an injunction preventing the defendants from disposing of the property. See id.
The supreme court reversed a final decree in favor of the plaintiffs, holding that the case "was essentially a suit for damages which should be properly tried in a trial on the law side of the docket." 89 So.2d at 670. The court observed that while an injunction is a matter for equity jurisdiction, "merely praying for an injunction does not mean that equity jurisdiction of the whole cause is automatically invoked." Id.
Tampa & G.C.R. Co. contains the supreme court's most often cited analysis of what it means for a remedy at law to be inadequate. The plaintiff in Tampa sought equitable relief for "damage and injury arising from tort," arguing that the defendant was an insolvent railroad, and "that a judgment at law against it would be uncollectible and of no value." 73 Fla. at 151, 74 So. at 299. The supreme court rejected this claim of an inadequate remedy at law:
The inadequacy of a remedy at law to produce money is not the test of the applicability of the rule. All remedies, whether at law or in equity, frequently fail to do that; and to make that the test of equity jurisdiction would be substituting the result of a proceeding for the proceeding which is invoked to produce the result. The true test is, could a judgment be obtained in a proceeding at law, and not, would the judgment procure pecuniary compensation.
73 Fla. at 151-52, 74 So. at 299.
The "no adequate remedy at law" requirement was adopted "to reduce the tension that plagued the relationship between the Chancery and the common law courts during the seventeenth century." Rhonda Wasserman, Equity Renewed: Preliminary Injunctions to Secure Potential Money Judgments, 67 WASH. L.REV. 257, 319 (1992) (footnote omitted). As Professor Laycock has explained:
Equity developed in the court of chancery, which emerged in the fourteenth century, when the Chancellor began to regularize a procedure for dealing with petitions of the King's personal justice. Not surprisingly, there were intermittent complaints about this bypass of the regular courts. But the intermittent attacks on chancery did not preclude cooperation between chancery and the common law courts. Chancery was doing judicial work that the common law courts were ill-equipped to do. Gradually, the two courts reached an accommodation. Chancery would not duplicate the work of the common law courts, but it would do other judicial work that the common law courts had never done. In short, equity would take jurisdiction only if there were no adequate remedy at law. This is the origin of the irreparable injury rule.
Laycock, 103 HARV. L.REV. at 699 (footnotes omitted).
With the merger of the law and equity courts, the historical reasons for equity's deference to common law courts and remedies disappeared. See Wasserman, 67 WASH. L.REV. at 319. The pre-merger Florida cases reflect the need to preserve the structural distinction between law and *710 equity in the court system. Post-merger cases are hamstrung by the language of the older, binding authority and are therefore prevented from looking behind the irreparable injury rule of Tampa & G.C.R. Co. to consider its logic and justice.
To modern lawyers, the "choice between legal and equitable remedies is historical and almost wholly dysfunctional." Laycock, 103 HARV. L.REV. at 696. Prior to the merger of the courts, lawyers had to be skilled at drawing the distinction between legal and equitable remedies. The penalty for bringing a case in the wrong court was dismissal or transfer to the correct side of the docket. See Ramsey, 89 So.2d at 670; Stewart, 181 So. at 374.
Under modern pleading rules, equitable and legal causes of action may travel in the same complaint. See, e.g., Billian v. Mobil Corp., 710 So.2d 984, 991-92 (Fla. 4th DCA), rev. denied, 725 So.2d 1109 (Fla. 1998). Such a joinder of legal theories presents difficulty in trial management, because fact issues may overlap and a litigant is entitled to a jury trial for actions at law. See id. at 992. Among modern lawyers and judges, "[c]onfusion between [legal and equitable causes of action] persists." Laycock, 103 HARV. L.REV. at 696. Lawyers sensitive to the distinction between the remedies often try to force a case into an equitable pigeonhole in order to obtain injunctive relief that will make a final judgment meaningful.
Professor Wasserman has made a compelling argument that a preliminary injunction should be available to a plaintiff in an action at law who demonstrates that a defendant will dissipate or hide her assets unless restrained by the court. See 67 WASH. L.REV. at 266, 348. To obtain a temporary injunction, a plaintiff must prove that: (1) she will suffer irreparable harm unless the status quo is maintained; (2) she has no adequate remedy at law; (3) she has a clear legal right to the relief requested and a substantial likelihood of success on the merits; and (4) a temporary injunction will serve the public interest. See, e.g., Singletary v. Costello, 665 So.2d 1099, 1102 (Fla. 4th DCA 1996) (citation omitted); Taylor v. Cesery, 717 So.2d 1112, 1114 (Fla. 1st DCA 1998) (citation omitted).
As to the irreparable harm/inadequate remedy aspects of the showing necessary for a preliminary injunction, Professor Wasserman concludes that "in cases in which the plaintiff sues to collect money damages and can demonstrate that the defendant is about to dissipate her assets to frustrate the potential money judgment," the plaintiff's harm should be considered irreparable. 67 WASH. L.REV. at 293. She points out that
[i]f, as Professors Wright and Miller have suggested, "the most compelling reason in favor of entering a preliminary injunction is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act," then the case in favor of preliminary injunctions to enjoin the dissipation of assets is compelling indeed.
Id. at 286 (footnotes omitted) (quoting 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2947, at 424 (1973)).
Recognizing that this approach is contrary to the holding of Tampa & G.C.R. Co. and its progeny, Professor Wasserman argues:
If the plaintiff can prove that the defendant is about to dissipate assets to render herself judgment-proof, it is difficult to see how the potential money judgment will be an adequate remedy for the plaintiff. The author believes [Oxford Int'l Bank & Trust and Stewart v. Manget] are incorrect to the extent they hold that a money judgment is an adequate remedy regardless of whether the defendant is engaged in conduct designed to render the judgment unenforceable.
*711 67 WASH. L.REV. at 293, n. 143.[2]
If the irreparable injury/inadequate remedy portion of the temporary injunction equation were expanded, the other prerequisites to such relief, combined with the requirements of Florida Rule of Civil Procedure 1.610, would create a workable legal framework for ruling on the issuance of a temporary injunction that balances the interests of a defendant with those of the plaintiff and the public. To decide whether a preliminary injunction should issue, a trial court must balance the hardships between the plaintiff and the defendant. The bond requirement of Rule 1.610(b) reduces the risk of harm to a defendant. A trial court can fashion a flexible temporary injunction that gives the defendant some access to funds. During the pendency of a temporary injunction, a defendant may seek modification to obtain funds for specified uses. See 67 WASH. L.REV. at 296 (discussing ways courts reduce risk of harm to defendants).
Finally, a temporary injunction preventing a defendant from rendering herself judgment proof serves the public interest in six ways: 1) the injunction protects the integrity of the judicial process; 2) the injunction reduces any incentive the defendant would have to delay the litigation; 3) as compared to prejudgment attachment, the temporary injunction diminishes a plaintiff's leverage over a defendant; 4) a temporary injunction "reduces the likelihood that other creditors of the defendant will rush to file claims against her or even force her into involuntary bankruptcy"; 5) a preliminary injunction is less likely to affect the rights of innocent third parties who may be in possession of a defendant's property than prejudgment attachment or garnishment; and 6) because of the geographical limitations of garnishment and attachment, an injunction, which operates in personam on a defendant, "eliminates the need for duplicative actions in multiple states." 67 WASH. L.REV. at 299-305.
Florida law has tied itself to a rule of law firmly rooted in history, but for which the original justification has evaporated. As Justice Holmes wrote in 1897:
The rational study of law is still to a large extent the study of history. History must be a part of the study, because without it we cannot know the precise scope of rules which it is our business to know. It is a part of the rational study, because it is the first step toward an enlightened skepticism, that is, toward a deliberate reconsideration of the worth of those rules. When you get the dragon out of his cave on to the plain and in the daylight, you can count his teeth and claws, and see just what is his strength. But to get him out is only the first step. The next is either to kill him, or to tame him and make him a useful animal.... It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.
O.W. Holmes, The Path of the Law, 10 HARV. L.REV. 457, 469 (1897).
A "deliberate reconsideration" of the irreparable injury rule compels the conclusion that, assuming the other prerequisites are met, a temporary injunction may issue where the plaintiff has proven a demonstrable risk that the defendant will transfer, hide, or dissipate her assets, even if the plaintiffs claim is based on an action at law. In this context, Florida's preference *712 for legal remedies over equitable ones no longer serves any useful purpose.
NOTES
[1] "In 1967, Florida adopted rules of civil procedure which gave the circuit courts jurisdiction to hear cases in which counts at law and counts in equity were pled in the same complaint as alternative grounds for relief. In re Florida Rules of Civil Procedure 1967 Revision, 187 So.2d 598, 600 (Fla.1966); Ch. 67-254, Laws of Fla.; Fla. R. Civ. P. 1.040, 1.110(g)." Billion v. Mobil Corp., 710 So.2d 984, 991 (Fla. 4th DCA), rev. denied, 725 So.2d 1109 (Fla.1998). Prior to that time Florida's courts of law were separate from its courts of equity.
[2] To support her view, Professor Wasserman cites to cases which have held that the "unsatisfiability of a money judgment can constitute irreparable injury." See Rhonda Wasserman, Equity Renewed: Preliminary Injunctions to Secure Potential Money Judgments, 67 WASH. L.REV. 257, 292-93 at n. 141-42 (1992) (citing Hoxworth v. Blinder, Robinson & Co. 903 F.2d 186, 206 (3d Cir.1990); In re Feit & Drexler, Inc., 760 F.2d 406, 416 (2d Cir.1985); Roland Mach. Co. v. Dresser Indus., Inc., 749 F.2d 380, 386 (7th Cir.1984); Teradyne, Inc. v. Mostek Corp., 797 F.2d 43, 52-53 (1st Cir. 1986)).