# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

———————————————

JONATHAN LOGAN and SMART COMMUNICATIONS HOLDING, INC.,

Appellants,

v.

JANICE LOGAN, individually and as trustee for the James Logan Family Trust dated February 10, 2021, and ALEXIS LOGAN,

Appellees.

No. 2D2023-1798

———————————————

November 22, 2024

Appeal from the Circuit Court for Sarasota County; Charles E. Williams, Judge.

David A. Wallace and Caroleen B. Brej of Bentley Goodrich Kison PA, Sarasota; Julie Negovan and Reginald K. Petersen of Griesing Mazzeo Law, LLC, Fort Lauderdale; Mark A. Schwartz and Bonnie Lee A. Polk of Williams Parker Harrison Dietz & Getzen, Sarasota, for Appellants.

Peter F. O'Neill, David E. Schoenfeld, and Andrew L. Franklin of Shook, Hardy & Bacon L.L.P., Chicago, Illinois; Anitra R. Clement of Shook, Hardy & Bacon L.L.P., Tampa, for Appellee Janice Logan, individually and as trustee for the James Logan Family Trust dated February 10, 2021.

No appearance for Appellee Alexis Logan.

ATKINSON, Judge.

Jonathan Logan and Smart Communications Holding, Inc., appeal the trial court's nonfinal order granting a temporary injunction in favor of Janice Logan, individually and as trustee for the James Logan Family Trust dated February 10, 2021. We reverse because the trial court erred in concluding that Janice established a likelihood of irreparable harm for which she had no adequate legal remedy.[1] Because we reverse on this basis, we do not reach the other issues Appellants raised on appeal.

## Background

The underlying case is a dispute between Jonathan and Janice Logan—son and mother—regarding the ownership and operation of a family business named Smart Communications. Jonathan is the founder, CEO, and president of the company. Jonathan's father and Janice's husband, James Logan, was a director and the CFO of the company. Janice had no formal role with the company.

Jonathan and James each owned 50% of the company's stock, though James later transferred his stock to his trust. In addition to salaries, Jonathan and James received perquisites as part of their "compensation package[s]." Jonathan had access to several company-owned boats and vehicles, as well as a house and a condominium unit. James had access to another company-owned house, in which he and Janice resided, and another company-owned automobile. Janice was not paid a salary or provided any benefits other than what she enjoyed derivatively through James.

James died on October 16, 2022. Janice continued living in the company-owned house and kept possession of the company-owned

---

[1] For ease of reference and to avoid confusion, we refer to the members of the Logan family by their first names.

2

automobile that James had used prior to his death. Jonathan directed one of the company's accountants to "give [Janice] about a hundred [thousand dollars] a year . . . so she has some walk-around money" for her comfort. However, allegedly without Jonathan's authorization or knowledge, the accountant made Janice a salaried employee with health benefits.

Precipitating the underlying proceeding was a dispute regarding the disposition of James' stock. Because James had transferred his stock to his trust, the trust, of which Janice was the trustee and beneficiary, remained a 50% shareholder of Smart Communications. However, Jonathan produced a shareholders' agreement purportedly signed by him and James that required the sale of James' stock to the company upon his death. Noting the circumstances and timing surrounding Jonathan's production of the agreement, Janice disputed its authenticity and claimed that the trust was entitled to remain a 50% shareholder. Jonathan and Janice filed suit against each other for declaratory relief concerning the validity of the shareholders' agreement, among other claims, which the trial court consolidated.

After litigation commenced, Jonathan took certain actions against Janice that are the subject of the temporary injunction under review. First, Jonathan terminated Janice's employment status with Smart Communications, which terminated her salary and health benefits that she had begun receiving after James passed away. Second, Jonathan had Smart Communications commence a separate lawsuit asserting a claim for replevin against Janice to regain possession of the company-owned automobile that James had used and that Janice now had in her possession. Third, Smart Communications, at Jonathan's direction, commenced a separate declaratory judgment lawsuit against Janice

3

seeking a determination that she was required to pay rent for the company-owned house in which she had resided with James and in which she continued residing after his death. Although Jonathan served Janice with a notice to vacate, no eviction action had been filed at the time of the temporary injunction hearing. Finally, Jonathan directed the cancelation of company plans to replace a generator at the company-owned house in which Janice resided. The generator was inoperable, and Janice testified that Smart Communications offered to replace the generator but later decided it "was not going forth with the generator project" even though it had already paid $10,000 toward the installation.

Janice filed an amended complaint in which she added a cause of action alleging that Jonathan breached his fiduciary duties by taking retaliatory actions designed to manipulate the litigation by depriving her of resources such as income, health insurance, a generator, her house, and her vehicle.[2] Janice also filed a motion for temporary injunction in which she requested that the trial court enjoin Jonathan from, in relevant part, charging her rent, evicting her, repossessing company assets, pursuing "vexatious" and "retaliatory" lawsuits against her, halting work on the generator replacement, and terminating her employment, salary, and other benefits.

---

[2] Jonathan moved to strike Janice's amended complaint as an unauthorized supplemental pleading because she did not obtain leave of court before filing it. See Fla. R. Civ. P. 1.190(d). After the trial court issued the temporary injunction that is the subject of this appeal, it entered an order striking the amended complaint but provided Janice with the opportunity to refile it by granting her request for leave to amend. Jonathan's argument in this appeal regarding the status of the pleadings at the time the trial court issued the temporary injunction is unpreserved because neither Jonathan nor Smart Communications argued to the trial court that it could not issue the injunction because it was predicated on a pleading that was a legal nullity.

4

Following an evidentiary hearing, the trial court concluded that Janice established each element necessary for the issuance of a temporary injunction:

1. The Court finds that as to the circumstances surrounding the pending eviction and replevin proceedings along with the cancellation of the health insurance and income of [Janice] and based on her age, health history, and her prior dependency on the benefits of being a shareholder of the company show a prima facie case that [Janice] would suffer irreparable harm if the temporary injunction were not granted.

2. The Court finds that the immediacy of the circumstances surrounding the pending legal actions initiated by [Jonathan], especially the eviction proceedings, combined with the age of [Janice] and her current health issues, along with other evidence presented in the evidentiary hearing show a prima facie case supporting the argument that there is no adequate remedy at law.

3. Based on the evidence that the Court has considered and commented on within this order, the Court finds there is a substantial likelihood of success on the merits of the current lawsuit by [Janice].

4. The Court finds that the company employs in excess of 100 employees, [and] the stabilization and maintaining the status quo of the company and its employees until this matter is ultimately resolved indicated the granting of this temporary injunction would serve the public interest.

The temporary injunction imposed the following four requirements:

1. Enjoining [Jonathan] from charging and demanding rent for [Janice's] occupation and use of her residence . . . during the pendency of these actions . . . .

2. Staying any pending or prospective legal eviction or repossession actions relating to alleged Smart Communication, Inc. and/or Loco Florida, LLC, property or assets that are currently in possession or being used by [Janice], (particularly [Janice]'s residence . . . and personal vehicles) during the pendency of the litigation . . . . This would include pursuing any suits in Sarasota

County demanding declaratory judgment, eviction, rents allegedly owed on Smart Communication and or Loco Florida LLC owned property, and related replevin actions of alleged company owned vehicles.

3. Reinstating [Janice]'s position within the company, her salary and benefits, including health benefits, at the same rate and frequency paid prior to the termination of said salary and benefits by [Jonathan].

4. [Jonathan] shall reinstate or facilitate the completion of the generator project that was begun or contemplated to begin at the . . . property that was ceased at the direction of [Jonathan].[3]

## **Analysis**

"[A] temporary injunction is an extraordinary remedy that can only be granted if the movant establishes (1) a likelihood of irreparable harm, (2) unavailability of an adequate legal remedy, (3) substantial likelihood of succeeding on the merits, and (4) support for the injunction within considerations of public interest." *Gulf Coast Com., LLC v. KOS Corp.*, 351 So. 3d 1212, 1215 (Fla. 2d DCA 2022) (alteration in original) (quoting *Phantom of Clearwater, Inc. v. Pinellas County*, 894 So. 2d 1011, 1014 (Fla. 2d DCA 2005)). Appellants argue that, as to each of the four requirements in the temporary injunction, the trial court erred as a matter of law by concluding that Janice established a likelihood of irreparable harm and that no adequate legal remedy exists. Our review of these legal conclusions is de novo. *See Surgery Ctr. Holdings, Inc. v. Guirguis*, 318 So. 3d 1274, 1277 (Fla. 2d DCA 2021) (citing *REV Recreation Grp., Inc. v. LDRV Holdings Corp.*, 259 So. 3d 232, 235 (Fla. 2d DCA 2018)).

---

[3] The parties' pleadings alleged that Loco Florida, LLC, is a related entity that Jonathan and James similarly owned and operated on a 50/50 basis and in which James' stock purportedly passed to Janice through his trust.

"The concepts of irreparable harm and no adequate legal remedy are distinct prongs of the temporary injunction test, but they are related to one another." *Fla. Ass'n of Realtors v. Orange County*, 350 So. 3d 115, 130 (Fla. 5th DCA 2022). "The question of whether the injury is 'irreparable' turns on whether there is an adequate legal remedy available. *Irreparable* injury means, in essence, that injunction is the only practical mode of enforcement." *Surgery Ctr. Holdings, Inc.*, 318 So. 3d at 1282 (quoting *Corp. Mgmt. Advisors, Inc. v. Boghos*, 756 So. 2d 246, 247–48 (Fla. 5th DCA 2000)); *see also Weinstein v. Aisenberg*, 758 So. 2d 705, 708 (Fla. 4th DCA 2000) (Gross, J., concurring specially) ("[W]hat makes an injury irreparable is that no other remedy can repair it." (quoting Douglas Laycock, *The Death of the Irreparable Injury Rule*, 103 Harv. L. Rev. 687, 694 (1990))).

First, the trial court erred by concluding that Janice established a likelihood of irreparable harm for which she had no adequate legal remedy based on Appellants' filing and pursuit of lawsuits against her related to company assets. The mere fact that Appellants had filed—or the possibility that they might in the future file—lawsuits against Janice does not give rise to a likelihood of irreparable harm. *Cf. Bautista REO U.S., LLC v. ARR Invs., Inc.*, 229 So. 3d 362, 365 (Fla. 4th DCA 2017) ("The initiation of foreclosure proceedings does not constitute irreparable harm."). The harm that Janice alleges—for example, "that eviction would . . . constitute irreparable harm"—could only occur if Appellants are successful in prosecuting the lawsuits. But during any pending or prospective lawsuit, Janice, like any other defendant, is entitled to raise defenses and otherwise pursue a favorable outcome. *See generally* Fla. R. Civ. P. 1.140 (outlining the procedure for raising defenses). In other words, the litigation arising from the filing of the lawsuits is itself an

7

adequate legal remedy. So, the alleged harm is not irreparable because Janice has the legal remedy of her ability under established rules of civil procedure to defend the lawsuits and avoid an outcome such as eviction. *See Reserve at Wedgefield Homeowners' Ass'n v. Dixon*, 948 So. 2d 65, 67–68 (Fla. 5th DCA 2007) (reasoning that "the threat that [appellant] will institute foreclosure proceedings" and the "possibility that [appellee] may lose her property in the foreclosure" did not constitute irreparable harm for which no adequate remedy at law exists because "such loss could only occur upon successful prosecution of the foreclosure proceedings, during which [appellee] could raise all of the issues raised in her motion for injunctive relief as defenses thereto"); *Hutchinson v. Kimzay of Fla., Inc.*, 637 So. 2d 942, 944 (Fla. 5th DCA 1994) (reasoning that "[t]here can be no irreparable harm to Kimzay in having the matter litigated in the eviction action" and that "[a] temporary injunction was not necessary" given that "the arguments which have been raised in support of the injunction can be raised as defenses in the eviction action"); *Wis. Real Est. Inv. Tr. v. Rouse*, 466 So. 2d 289, 290 (Fla. 5th DCA 1985) ("Certainly Rouse will suffer no irreparable injury in defending an eviction proceeding in county court. The facts Rouse alleges in support of the preliminary injunction are available as defenses in the eviction action . . . ."); *Palm Corp. v. 183rd St. Theatre Corp.*, 344 So. 2d 252, 252–53 (Fla. 3d DCA 1977) (reversing an injunction that enjoined the prosecution of an eviction action because the grounds in support of the injunction were equitable defenses that could be raised in the eviction action); *see also Liza Danielle, Inc. v. Jamko, Inc.*, 408 So. 2d 735, 738 (Fla. 3d DCA 1982) (providing that "an injunction will not lie where there is a choice between the ordinary processes of law and the injunction, the former being sufficient to furnish the full relief to which

8

the complaining party is entitled" (quoting 29 Fla. Jur. 2d, *Injunctions* § 20)).

Second, the trial court erred by enjoining Appellants "from charging and demanding rent" from Janice, which is coextensive with the trial court's erroneous prohibition of Appellants' pursuit of a declaratory judgment lawsuit to attempt to establish Janice's liability to pay rent. Like the filing of a lawsuit, the mere charging or demanding of rent does not itself create a likelihood of irreparable harm. The potential harm would be realized in the event Janice is obligated to pay rent, but Janice has adequate legal remedies whereby she can dispute her alleged obligation to pay rent and defend any resulting legal action based on a failure to pay the rent that is allegedly owed. *Cf. Reserve at Wedgefield Homeowners' Ass'n*, 948 So. 2d at 67–68 (reasoning that the appellee had an adequate legal remedy to defend any foreclosure proceeding based on a dispute that one of her lots was not subject to the imposition of homeowners' association dues); *Hutchinson*, 637 So. 2d at 943–44 (reasoning that the appellee had adequate legal remedies to defend an eviction action based on an alleged failure to pay rent); *see also Liza Danielle, Inc.*, 408 So. 2d at 738.

Third, the trial court erred by concluding that Janice established a likelihood of irreparable harm for which she had no adequate legal remedy based on the termination of her employment status and related benefits. This court need not and does not decide whether Janice has been wrongfully terminated because even if the termination were to be found unlawful, the loss of employment does not give rise to irreparable harm because an employee has an adequate legal remedy for damages to redress his or her lost income and other benefits attendant to employment. *See Shearson Lehman Hutton, Inc. v. Meyer*, 561 So. 2d

9

1331, 1332 (Fla. 5th DCA 1990) ("Injunctive relief is simply not available to prevent a termination of private employment inasmuch as the employee has an adequate remedy at law."); *Mike Smith Pontiac GMC, Inc. v. Smith*, 486 So. 2d 89, 90 (Fla. 5th DCA 1986) ("Furthermore, if Smith has enforceable employment agreements that were breached, money damages are sufficient."); *Waters v. Sch. Bd. of Broward Cnty.*, 401 So. 2d 837, 838 (Fla. 4th DCA 1981) ("Mere loss of employment does not constitute irreparable injury."); *Dania Jai Alai Int'l, Inc. v. Murua*, 375 So. 2d 57, 58 (Fla. 4th DCA 1979) (providing that the "mere loss of income [resulting from termination of employment] does not constitute irreparable injury" (citing *Dep't of Health & Rehab. Servs. v. Artis*, 345 So. 2d 1109, 1111 (Fla. 4th DCA 1977))); *see also Weinstein*, 758 So. 2d at 706 ("The appellee has an adequate remedy at law, i.e., money damages. A claim for money damages does not provide a sufficient basis for injunctive relief." (citing *Hiles v. Auto Bahn Fed'n, Inc.*, 498 So. 2d 997, 998–99 (Fla. 4th DCA 1986))).  Indeed, the record reflects that Janice is currently pursuing her legal remedy by asserting a claim in her amended complaint for breach of fiduciary duty in which she seeks money damages for "income lost."

Finally, the trial court erred by concluding that Appellants' refusal to provide an operable generator for Janice's residence gave rise to a likelihood of irreparable harm for which no adequate legal remedy exists. To the extent that Janice has an enforceable claim based on Appellants' alleged reneging on an agreement to provide a generator, the harm is not irreparable because she has an adequate legal remedy for money damages based on the cost to acquire the generator.  *See Weinstein*, 758 So. 2d at 706.  Any such harm is not irreparable for the additional reasons that Janice's claimed need for a generator was contingent on the

mere possibility of her residence losing power, *see Donoho v. Allen-Rosner*, 254 So. 3d 472, 474 (Fla. 4th DCA 2018) ("Irreparable injury will never be found where the injury complained of is 'doubtful, eventual or contingent.' " (quoting *Jacksonville Elec. Auth. v. Beemik Builders & Constructors, Inc.*, 487 So. 2d 372, 373 (Fla. 1st DCA 1986))), and that there was no evidence the residence needed a functioning generator to provide livable conditions or that there was any other imminent need for a functioning generator, *see Fla. Ass'n of Realtors*, 350 So. 3d at 130 ("[T]he irreparable injury must be 'actual and imminent.' " (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000))).

As to each of the four requirements of the temporary injunction, the trial court erred by concluding that Janice established a likelihood of irreparable harm for which she lacked an adequate legal remedy. Accordingly, we reverse the trial court's order granting the temporary injunction and remand for further proceedings.

Reversed and remanded.

SLEET, C.J., and SMITH, J., Concur.

———————————————

Opinion subject to revision prior to official publication.