890 So.2d 1119 (2004)
KEYSTONE CREATIONS, INC., Appellant,
v.
CITY OF DELRAY BEACH, a Florida municipal corporation, Appellee.
No. 4D03-3290.
District Court of Appeal of Florida, Fourth District.
November 24, 2004.
Rehearing Denied February 1, 2005.
*1121 Mark R. Osherow and David I. Shiner of Mark R. Osherow, P.A., Boca Raton, for appellant.
Terrill C. Pyburn and R. Brian Shutt, Delray Beach, for appellee.
POLEN, J.
This appeal arises from a final Order Granting Plaintiff, City of Delray Beach's Motion for Enforcement of Final Judgment and Issuance of an Injunction and Order Denying Defendant, Keystone Creations, Inc.'s Motion to Vacate, Strike, or Modify Consent Final Judgment and Injunction. We affirm the order of the trial court in all regards. Appellant Keystone Creations, Inc. ("Keystone") raises four points on appeal and we address each after a synopsis of the parties' fifteen year history underlying this litigation.
Keystone purchased a parcel of property located in the City of Delray Beach ("the City") in 1989 to conduct a stone monument and stone cutting business and has been operating there since 1989. Ronald Ballman, a co-principal of Keystone, acted as the general contractor for Keystone's improvements.
In 1990, the City's Land-Use Zoning Regulations ("LDRs") changed the Keystone parcel's zoning from "medium industrial" to "mixed industrial and commercial," changing stone cutting from a "permitted" to a "conditional" use. "Conditional" use status allows the City to impose additional requirements on the landowner. The trial court held that Keystone was not "grand-fathered" as a "permitted" use, an issue which Keystone disputes in this appeal.
In July 1991, the City cited Keystone for failure to submit a site plan as required by the new 1990 Zoning Regulations. The City gave Keystone until November 1993 to correct the violations.
In August 1993, Keystone applied for "conditional" use approval to permit the operation of a stone cutting business. Its application included two proposed buildings, landscaping, parking areas, architectural renovations, and perimeter walls. Keystone also submitted a proposed site plan.
On September 28, 1993, the City granted Keystone's conditional use request, with certain additional requirements. On March 9, 1994, the City approved Keystone's site plan with certain added conditions, including a construction deadline of March 28, 1995.
In February 1995, the City granted Keystone's request for an additional eighteen month extension to complete the construction of improvements. Again, in August 1996, the City granted Keystone's request for an additional four months for completion of construction. Finally, in December 1996, the City cited Keystone for violation of the conditional approval of September 28, 1993.
*1122 Contributing to the mounting discord between the parties, Keystone raised the elevation grade at its site between August and December of 1996 by two to three feet. Paul Dorling, the City's Principal Planner at that time, testified at trial that he complained to Ballman in December of 1996 that the site conditions had changed from the site plan previously submitted and approved.
On January 7, 1997, the City filed a Complaint in the present case claiming that Keystone had failed to comply with the City's conditional use approval requirements. The City sought to enjoin Keystone from operating because of its continued violations of City ordinances and codes. Keystone raised the affirmative defenses of estoppel, laches, waiver, and illegality. Keystone also counter-claimed for declaratory and injunctive relief and money damages.
On June 25, 1997, at the parties' joint request, the trial court entered a Consent Final Judgment, which dismissed the City's Complaint and Keystone's Counter-Claim with prejudice and ordered the parties to comply with the terms and conditions of the Settlement Stipulation. The Settlement required Keystone's proposed Phase I improvements to be completed by January 12, 1998. Paragraph 11 of the Settlement Stipulation states:
The parties agree that this settlement is a full and complete settlement of any and all controversies between the parties regarding this case and that the terms and conditions of this Stipulation were arrived at in arms-length negotiations between parties, with independent legal advice. It is the intention of this Stipulation to settle all controversies between and among the parties hereto in the action including without limitation any and all claims which were or could have been brought therein. The Complaint and Counterclaim are hereby dismissed with prejudice with each party to bear their own costs and attorneys fees.
Keystone had not completed the improvements as of the January 29, 1998 deadline. The City, claiming that Keystone had failed to comply with the Settlement Stipulation, asked the trial court to enforce the Consent Final Judgment and to enjoin Keystone from further operation of its monument and stone cutting business. In response to the City's motion, Keystone asked the trial court to modify the Consent Decree to extend the time for completion of the improvements by six more months.
On March 3, 1998, the trial court entered an Order Deferring Ruling on City's Motion for Enforcement of Consent Final Judgment and Issuance of an Injunction, and Order Granting Defendant's Motion to Modify Consent Decree. The trial court granted Keystone nine additional months (until December 3, 1998) to comply with the terms of the Settlement Stipulation. The trial court also required Keystone to file monthly reports with the court describing all actions Keystone had taken towards compliance. The court stated that "[i]f [Keystone] fails to file a monthly report, or [the City] is unsatisfied with a monthly report, [the City] shall have the right to move its Motion for Enforcement of the Consent Decree and Issuance of An Injunction for a hearing."
Thereafter, Keystone filed monthly status reports between March and October of 1998. The City filed its only reply to Keystone's monthly status reports on November 6, 1998. The City complained about the 1996 grade increase and other issues, demanding that Keystone must:
submit a revised engineering plan that would reflect how Keystone proposes to accommodate on site grading and on site storm water retention as the site has *1123 been raised approximately 2 to 3 feet; install asphalt parking, drive aisles and concrete curbing; install a 120 foot water main extension, fire hydrant, water service and a backflow preventer; and submit revised plans showing the change in the sewage system from a gravity main sewer to a septic system.
The City also demanded that Keystone reapply for an electrical permit, equip the building with doors as per approved plans, and obtain mechanical, electrical, and building final inspections.
The trial court held a hearing on July 6-8, 2003. Ballman testified that in March of 1998, during a meeting held at the site, a dispute arose between members of the City's Building and/or Planning and Zoning Departments as to various requirements for the project. Ballman testified that Assistant City Attorney David Tulces told Ballman to "holdup on the project until they could make up their mind." Ballman testified that because of Tulces' instruction, he stopped further work on the project. On the other hand, Tulces testified that he never gave such an instruction. Furthermore, the trial court noted that Ballman's account is not supported by any correspondence, stop work order, red tag, or any form of written direction from the City to Ballman. Significantly, the trial court found that Keystone's monthly status reports filed between March 3, 1998 and November of 1998 "belie[d]" Ballman's testimony that Keystone stopped working on Tulces' orders.
On July 15, 1999, and again on May 16, 2002, the City filed motions asking the trial court to find that Keystone violated the Settlement Stipulation and to issue an injunction prohibiting further operation of its stone-cutting business.
On July 2, 2002, Keystone asked the trial court to vacate, strike, or modify the Consent Decree claiming that:
2. The [City] has unilaterally modified and changed the terms of the Consent Decree in numerous unjustified attempts to thwart Keystone's ongoing attempts to fully comply....
5.... The Consent Decree was entered upon a mistaken view of the time necessary to complete the improvements, and upon a belief that the [City] would act in good faith, in an appropriate non-capricious manner, which has not occurred.
On July 28, 2003, the trial court issued an Order Granting Plaintiff, City of Delray Beach's Motion for Enforcement of Final Judgment and Issuance of an Injunction and Order Denying Defendant, Keystone Creations, Inc.'s Motion to Vacate, Strike, or Modify Consent Final Judgment and Injunction. The court found that:
1. Keystone has not complied with the terms of the Settlement Agreement. The Court specifically finds that Keystone has failed to timely:
(A) Construct and complete the improvements including construction and paving of parking areas, construction of dumpster
(B) Install landscaping
(C) Install irrigation
(D) Obtain a Certificate of Occupancy
2. The City has not changed the terms of the Settlement Agreement nor has the City asserted additional demands and requests beyond those normally required for the orderly completion of construction projects.
3. The City may seek to enforce the Settlement Agreement.
4. Keystone's due process rights have not been violated since the date of *1124 the signing of the Settlement Agreement.
5. This Court also finds that despite internal discussions and memorandums within the City itself, which may conflict with the four corners of the Settlement Stipulation, the City has not directed the stoppage of work, nor prevented the completion of work.
Finally, the trial court found that the City's Motion for Enforcement of a Consent Final Judgment and Issuance of an Injunction was an operative claim for relief and was supported by the evidence submitted through the three days of proceedings. The trial court granted the City's motion, and consequently enjoined Keystone from further operating as a monument and stone cutting business at its present location.
The first argument Keystone raises on appeal is that the trial court wrongfully granted the City injunctive relief. The standard of review of a trial court's decision granting an injunction is abuse of discretion. See, e.g., M.G.K. Partners v. Cavallo, 515 So.2d 368, 369 (Fla. 4th DCA 1987) ("A trial court's ruling on a motion for injunction ... comes to the appellate court with a presumption of correctness, and will be reversed only upon a showing of a clear abuse of discretion or a clearly improper ruling.").
The proper issuance of a temporary injunction requires a showing of four elements: "(1) irreparable harm; (2) a clear legal right; (3) an inadequate remedy at law; and (4) that the public interest will be served." Weinstein v. Aisenberg, 758 So.2d 705, 706 (Fla. 4th DCA 2000).
Keystone asserts, with little explanation, that there was no showing whatsoever of any of these elements. The City argues that the injunction was properly issued. First, the City would be irreparably harmed if Keystone is allowed to continue to conduct its business as a monument and stone cutting business. Irreparable harm must be presumed in this case. Metropolitan Dade County v. O'Brien is persuasive here. 660 So.2d 364 (Fla. 3rd DCA 1995). In O'Brien, the defendants established a business without complying with various county ordinances or securing necessary permits. Id. The appellate court held that the trial court abused its discretion in failing to issue an injunction, holding that "[w]here the government seeks an injunction in order to enforce its police power, any alternative legal remedy is ignored and irreparable harm is presumed." Id. at 365.
Second, the trial court properly found that the City has a legal right to relief. Strong evidence that the City has a clear legal right is that the Settlement, agreed to by both parties, unequivocally states that the trial court "shall retain jurisdiction to enforce the Judgment and to enter an injunction, if necessary, in accordance with this Stipulation." Moreover, in the trial court's March 3, 1998 order, granting Keystone's motion to modify the consent decree to extend the compliance deadline, the court stated: "If [Keystone] fails to file a monthly report, or [the City] is unsatisfied with a monthly report, [the City] shall have the right to move its Motion for Enforcement of the Consent Decree and Issuance of An Injunction for a hearing." Additionally, the O'Brien court held that, in circumstances where one continues to operate a business while aware of ordinance violations, "the government has a clear legal right to relief." 660 So.2d at 365.
The third necessary prong, an inadequate remedy at law, is also met under these circumstances. See Weinstein, 758 So.2d at 706. In P.M. Realty & Investments *1125 v. City of Tampa, 779 So.2d 404 (Fla. 2nd DCA 2000), the City of Tampa brought an action against nightclub operators because the operators did not obtain a special use permit before opening an adult entertainment nightclub. The second district affirmed the trial court's injunction order, relying on the third district's holding in O'Brien, 660 So.2d at 365, that "where the government seeks an injunction in order to enforce its police power, any alternative legal remedy is ignored." P.M. Realty & Invs., 779 So.2d at 406-07. Here, money damages would be similarly inadequate to stop Keystone from violating the City's Code of Ordinances and LDRs, in violation of the Settlement.
Finally, Keystone argues that the injunction has disserved the public because there is no evidence that its operations were dangerous, or posed a danger of harm to the community. However, because the public has an interest in seeing that city ordinances and zoning plans are complied with, the issuance of an injunction here does serve the public interest. See, e.g., P.M. Realty, 779 So.2d at 406-07 ("[T]he public has an interest in seeing that its ordinances and city zoning plan are complied with").
Because all four elements required under Weinstein have been satisfied, we affirm the trial court's granting of the City's request for injunctive relief against Keystone.
Keystone's second argument on appeal is that the trial court erred in failing to enforce Keystone's existence as a "permitted" use under the prior LDRs existing in 1989. Keystone argues that it should have been "grand-fathered" in 1990 when the City issued new LDRs and should have been allowed to complete its initial site plan approval process. Keystone alleges that it was informed by the City in 1989 that any change in use regulations for the property would not effect Keystone, since Keystone would be "grand-fathered" as a permitted use existing at the time of the property purchase. Regardless of any former merit to Keystone's claim, however, this issue was not properly before the trial court. The Settlement Stipulation explicitly states, in pertinent part:
The parties agree that this settlement is a full and complete settlement of any and all controversies between the parties regarding this case.... It is the intention of this Stipulation to settle all controversies between and among the parties hereto in the action including without limitation any and all claims which were or could have been brought therein.
As a result, even if Keystone might have had a valid due process claim against the City in 1990 as the result of the rezoning, Keystone agreed in 1997 to the Settlement Stipulation and Consent Final Judgment, which dismissed with prejudice all claims the parties could have brought against each other. The Florida Supreme Court has held that "settlements are construed in accordance with the rules for interpretation of contracts." Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla.1985). Furthermore, "where the contract is clear and unambiguous there is no reason to go further." V & M Erectors, Inc. v. Middlesex Corp., 867 So.2d 1252 (Fla. 4th DCA 2004). Keystone's "grand-fathering" claim is therefore moot as a result of the 1997 Settlement Stipulation, in which Keystone agreed that it was settling "any and all claims which were or could have been brought therein." We therefore affirm the trial court's finding that Keystone is not a "grand-fathered" "permitted use."
Keystone's third argument on appeal is that the trial court should have held that the City unilaterally changed the terms of the Settlement Stipulation. Specifically, Keystone argues that the City unilaterally changed the terms of the Settlement Stipulation *1126 by (1) allegedly advising Keystone to cease work until further notice and (2) requiring a revised engineering plan due to the raised fill. The trial court held that the City has not changed the terms of the Settlement nor has the City asserted additional demands and requests beyond those normally required for the orderly completion of construction projects.
Keystone argues that the trial court erred in failing to find that Keystone stopped work on the project because of an alleged instruction given to Ballman by Assistant City Attorney Tulces. "If the ruling consists of a pure question of fact, the ruling must be sustained if supported by competent substantial evidence." State v. Glatzmayer, 789 So.2d 297, 301 n. 7 (Fla.2001). The trial court noted that Ballman's testimony, as to instructions to stop work, is not supported by any correspondence, stop work order, red tag, or any form of written direction from the City to Ballman. Furthermore, the trial court noted that the testimony was that no such stop work order, red tag, or direction was ever issued. Tulces testified that he never gave such an instruction to anyone during his term as Assistant City Attorney.
Significantly, the trial court held that Keystone's monthly status reports filed between March and November of 1998 "belie[d]" Ballman's testimony that Keystone stopped working on Tulces' orders. The activities that Keystone reported to have taken during the six months immediately following the alleged stop work instruction included electrical work; septic tank work and inspection; preparation and cleaning of the driveway; clearing up yards and setting up forms for concrete pours; completion of two large doors for the saw building; hiring of a new door contractor; plastering; completion of the wall on the south side of the property; a call for final inspection; installation of fencing on the south side of the property; and continued working with an engineer on drainage plans. Because there is clearly "competent substantial evidence" to support the conclusion that Keystone did not stop work on Tulces' orders, we affirm the trial court.
Keystone also alleges that the City unilaterally changed the terms of the Settlement Stipulation by requiring a revised engineering plan due to the raised fill. The trial court held that the City has neither changed the terms of the Settlement Agreement nor asserted additional demands and requests beyond those normally required for the orderly completion of construction projects. "The interpretation of a written contract is a question of law to be decided by the court. An appellate court is not bound to give the trial judge's interpretation or construction of a contract any weighted presumption of correctness.... The appropriate standard of review is de novo." Atlanta Jet v. Liberty Aircraft Servs., 866 So.2d 148, 150 (Fla. 4th DCA 2004) (citations omitted). The Settlement Stipulation states:
1. The City agrees to allow the owner to continue and complete construction of Phase I of the site plan and conditional use previously approved by the City for owner's monument and stone cutting business. The improvements to be constructed are set forth on the approved site plan signed by Diane Dominguez with her signature dated 8/28/96 consisting of 2 pages which is attached hereto and made a part hereof (the `site plan').
The City does not contest that it required Keystone to provide revised engineering plans due to the change in elevations on the site because of Ballman's crushing of rock and burying it on the site. The City contends, however, that it did not assert additional demands or requests beyond those normally required for the orderly completion of construction projects. City Engineer Randal Krejcarek explained at the hearing that the approved engineering *1127 plans that were part of the previous package in the file ceased to be applicable to the site due to the changed elevation. "The site was higher than it was before. The proposed elevations were below the new existing ground." A revised engineering plan would be necessary to provide details for the construction of the required improvements because the new elevations, compared with those existing on the 1994 engineering plans referred to in the Settlement, were such that the improvements could not have been built without removing the fill that had been recently added. Ballman testified that Keystone has been adding fill to the property continuously  "[w]e keep adding to it even today." And, as Krejcarek testified, the City's request for a new engineering plan to reflect the change in elevations on the site was "standard practice when a site changes in elevation like this one does." Therefore, the construction details of drainage and paving required by the revised engineering plans as a result of the raised elevation were merely normal components of construction and did not constitute a violation or alteration of the Settlement. We affirm the trial court's holding that the that the City has not changed the terms of the Settlement nor has the City asserted additional demands and requests beyond those normally required for the orderly completion of construction projects.
The fourth and final argument Keystone raises on appeal is that the trial court erred in denying Keystone's motion to vacate, strike, or modify the Settlement Stipulation and Consent Decree. Keystone alleges that the City and Keystone shared a mistaken assumption that it was possible for Keystone to complete the improvements in the time allotted in the Consent Decree. The term "mutual mistake of fact" is one of law, and the equitable remedy of rescission is available only if the mistake is mutual and the fact is of the essence of the contract. Pendelton v. Witcoski, 836 So.2d 1025, 1026 (Fla. 1st DCA 2002).
As the trial court pointed out, Keystone's "mutual mistake" argument fails because it ignores that fact that, at the February 27, 1998 hearing, which was held two months after the agreed upon completion date, the trial court not only granted Keystone's six month extension request, but extended it to nine additional months despite the City's objections. The original stipulated deadline of January 12, 1998 was thus extended until December 3, 1998.
Additionally, this court has held that "it is never the role of the trial court to rewrite a contract to make it more reasonable for one of the parties to relieve a party from what turns out to be a bad bargain." Feldman v. Kritch, 824 So.2d 274, 277 (Fla. 4th DCA 2002). Nonetheless, the trial court granted Keystone more time than it bargained for in the Settlement Stipulation and even more time than it later asked for in the extension, so it is disingenuous for Keystone to now argue that the Stipulation should be vacated, reversed, or modified based on a mistake allegedly existing at the time the parties entered the agreement regarding how long the project would take. We affirm the trial court's holding that no mutual mistake existed at the time the parties entered into the Settlement Stipulation that would warrant granting Keystone's motion to vacate, strike or modify the Settlement Stipulation and Consent Decree.
Accordingly, for the reasons explained above, we affirm the order of the trial court in all regards.
AFFIRMED.
MAY, J., and GOLD, MARC H., Associate Judge, concur.