915 So.2d 220 (2005)
LOUIE'S OYSTER, INC., Appellant,
v.
VILLAGGIO DI LAS OLAS, INC., Appellee.
Nos. 4D04-3488, 4D04-4926.
District Court of Appeal of Florida, Fourth District.
November 2, 2005.
Rehearing Denied December 22, 2005.
*221 James K. Pedley and Cheryl T. Koewing of Pedley and Koewing, Fort Lauderdale, for appellant.
Richard G. Coker, Jr., of Coker & Feiner, Fort Lauderdale, for appellee.
POLEN, J.
Appellant, Louie's Oyster, Inc. ("Louie's"), the tenant, appeals a decision in favor of Appellee, Villaggio Di Las Olas ("Villaggio"), the landlord, in a dispute over amounts due under a commercial lease. Louie's began leasing property from Villaggio in November of 2000. The parties had a previous dispute regarding areas Louie's claimed were included in the lease, and Villaggio claimed were outside the lease. In a per curiam affirmance, this court upheld a decision in Louie's favor. Villaggio Di Las Olas, Inc. v. Louie's Oyster, Inc., 842 So.2d 127 (Fla. 4th DCA 2003). Villaggio then recalculated the amount of common area maintenance ("CAM") it believed Louie's owed for the additional areas, leading to this litigation. The trial court entered a final order in favor of Villaggio, based on the theories of waiver and estoppel. We reverse.
In response to Villaggio's recalculation of CAM, Louie's began this litigation by filing a complaint for declaratory relief, alleging that it was confused about its rights under the lease, and asking for the court's help in determining these rights. Prior to trial, Villaggio filed a Motion in Limine, asking the court to limit the testimony and evidence to the issues contained in the pleadings, and asserting that Louie's was attempting to argue a case not pleaded or laid out in its complaint. The judge limited the issue at trial only to whether CAM was due for a certain amount of time, rather than determining whether CAM was ever owed. Despite the trial court's ruling, Louie's presented evidence concerning the calculation of CAM for the entire lease period, as well as evidence concerning the proper method of calculation of CAM. Villaggio also put on evidence regarding how it calculated CAM, as well as offering evidence as to the prior dealings between the parties.
We hold that the trial court erred in granting Villaggio's motion in limine. The trial court found that Louie's complaint was not sufficient to support the additional issues regarding the calculation of CAM for the entire lease period. Whether a complaint is sufficient to state a cause of action is an issue of law. Atkins v. Topp Telecom, Inc., 873 So.2d 397, 398 (Fla. 4th DCA 2004). Issues of law are reviewed using a de novo standard. Id. "Unlike the pleading requirements in the *222 federal courts where notice pleading is the prevailing standard, the Florida Rules of Civil Procedure require fact pleading." Ranger Constr. v. Martin Cos., 881 So.2d 677, 680 (Fla. 5th DCA 2004). "In order to state a cause of action, a complaint must allege sufficient ultimate facts to show that the pleader is entitled to relief." MEBA Med. & Benefits Plan v. Lago, 867 So.2d 1184 (Fla. 4th DCA 2004). "At the outset of a suit, litigants must state their pleadings with sufficient particularity for a defense to be prepared." Horowitz v. Laske, 855 So.2d 169, 173 (Fla. 5th DCA 2003)(citing Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561 (Fla.1988)). "All ... contracts ... upon which an action may be brought or defense made, or a copy thereof or a copy of the portions thereof material to the pleadings, shall be incorporated in or attached to the pleading. Any exhibit attached to a pleading shall be considered a part thereof for all purposes." Fla. R. Civ. P. 1.130(a), (b).
Louie's complaint asserted that "the Defendant has breached the Agreement by improperly billing the Plaintiff for ... (CAM) expenses that it is not legally entitled to .... The Plaintiff does not believe that any money is owed for "CAM" to "VILLAGGIO." The Plaintiff is in doubt and in need of interpretation of the lease." Louie's also attached a copy of the lease to the complaint, as well as a copy of Villaggio's letter demanding payment of the additional CAM. Louie's complaint specifically denies owing any CAM whatsoever, and clearly states that Louie's was disputing Villaggio's method of calculating CAM. We find that Louie's complaint was sufficient to support the issues of whether CAM was properly calculated for the entire lease period.
Further, we find that the evidence presented at trial shows that Villaggio was not using the formula found in the lease to determine the amount of CAM that was due. The only two sections of the lease that refer to the method of calculating CAM are Sections 2.14 and 9.01, laid out below.
Section 2.14 Tenant to Bear Pro Rata Share of Commercial Property Operating Cost.
(a) In each Lease Year or partial lease year, as defined herein, Tenant will pay Landlord, in addition to all other rentals specified in this ARTICLE II, as further additional rent, a proportion of the "Commercial Property's Operating Cost," hereinafter defined, calculated by multiplying the total operating cost by a fraction, the numerator of which shall be the number of square feet contained in the Leased Premises, and the denominator of which shall be the aggregate number of leaseable building space in the Commercial Property. Such payment shall be made as provided hereinafter.
(b) For the purposes of this Lease, the term, "Commercial Property Operating Cost" shall be and mean the total cost and expense of operating, maintaining, managing and repairing (as necessary) the Commercial Property and all improvements thereon and appurtenances thereto. By way of illustration, and not in limitation of the foregoing, Commercial Property Operating Costs include all costs and expenses of maintaining the Common Area improvements, management fees, line painting, parking lot striping and repairs, grease trap management personnel, and associated items of maintenance and operation. Landlord agrees that the annual management fee will not increase by more than 4% a year.
Section 9.01 Utilities
Tenant shall be solely responsible for and promptly pay all charges for water, *223 gas, electricity or any other utility used or consumed in the Leased Premises. If any such charges are not paid when due, Landlord may, at its option, pay the same, and any amount so paid by Landlord shall thereupon become due to Landlord from Tenant as additional rent. Should Landlord elect to supply central water, gas, electricity or any other utility used or consumed in the Leased Premises, Tenant agrees to purchase and pay for the same as additional rent its proportionate share of all utilities. In no event shall Landlord be liable for the interruption or failure in the supply of any such utilities to the Leased Premises. Tenant shall also be required prior to taking possession of the Premises to pay the Landlord any and all water connection charges for the Premises if the Landlord has been required by the governing municipality to pay these charges prior to the Tenant taking possession of the Premises. For all common expenses that cannot be metered separately, Tenant shall pay its pro rata share of 17.71%.
Rather than using the formula laid out above, Villaggio calculated Louie's CAM by determining its actual usage of certain utilities, such as garbage and water, and used an arbitrary formula to calculate management fees, rather than using the formula set forth in the lease. The trial court agreed with Villaggio's calculations. We reverse and remand to the trial court with instructions to recalculate the amount of CAM for the years of 2001-2003, using the formula found in the lease.
Although the resolution of the issue above requires reversal of the case, we also find it necessary to address the theories on which the trial court based its final order. The order states, in relevant part: "The Court finds that based upon the evidence presented at trial that Plaintiff by its actions agreed to and accepted the methods used by Defendant in calculating the CAM expenses for 2001 and 2002." The court cites to numerous cases in its order, all of which deal with the defenses of estoppel and waiver.
As a matter of law, waiver and estoppel are affirmative defenses that must be pleaded. Fla. R. Civ. P. 1.110(d). Affirmative defenses are waived unless they are pleaded. Con-Dev of Vero Beach, Inc. v. Casano, 272 So.2d 203, 206 (Fla. 4th DCA 1973). Villaggio never pleaded the affirmative defenses of waiver and estoppel, and therefore, the defenses were waived. Villaggio argues that it could not plead waiver and estoppel prior to trial because it had no notice that Louie's would present evidence arguing that CAM was incorrectly calculated. However, as laid out above, we find that Louie's complaint was sufficient to put Villaggio on notice that Louie's was disputing Villaggio's method of calculating CAM. Because Villaggio failed to include these affirmative defenses in its pleadings, we find that the trial court erred in basing the final order on the theories of waiver and estoppel.
We reverse the final order in favor of Villaggio, and remand to the trial court with instructions to recalculate the amount of CAM due for the years 2001-2003, using the formula found in the lease. The trial court may reach this determination by using the existing record, or if the court in its discretion determines additional evidence is needed, it may conduct further evidentiary proceedings.
STEVENSON, C.J., and SHAHOOD, J., concur.