966 So.2d 405 (2007)
Henry YUSEM, Brian Yusem and Andrew Carlton, et al., Appellants,
v.
Robert BUTLER, Appellee.
No. 4D05-1250.
District Court of Appeal of Florida, Fourth District.
August 15, 2007.
Rehearing Denied November 5, 2007.
*407 John N. Buso, West Palm Beach, for appellants.
John Beranek of Ausley & McMullen, Tallahassee, H. Michael Easley of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, and Richard H. Willits, Lake Worth, for appellee.
PER CURIAM.
This appeal and cross-appeal arise from approximately twenty years of litigation regarding a business partnership gone sour. The trial court entered a final judgment addressing the various claims of the parties. The Appellants raise five issues on appeal, and Robert Butler raises six issues on cross-appeal. We affirm as to the issues raised on appeal in all respects without further comment. We reverse as to the cross-appeal on five of the six issues raised.
In February 1992, Butler filed suit against Henry Yusem (Yusem), Brian Yusem, Andrew Carlton, and H.Y. (Wyncreek), Inc. regarding two business transactions, including the Wyncreek project which is the subject of this appeal. The project arose from the meeting of Yusem and Butler in 1985, at which time Yusem indicated that he was an expert commercial real estate developer. Yusem and his associates told Butler of the Wyncreek project in which they planned to construct commercial retail and office buildings on a particular site. Butler agreed to invest $400,000 in the project.
Subsequently, Butler and the Appellants (with Yusem acting through H.Y.) entered into a written partnership agreement to establish a limited partnership named Wyncreek Partners, Ltd. The general partners of the partnership were H.Y., Brian Yusem, and Carlton, and the limited partner was Butler. The Limited Partnership Agreement included the following provisions which are especially relevant to this appeal:
6.4 Project Completion. Construction and use of the Project in accordance with the site plan, survey, building elevations and landscape plan prepared by Digby Bridges, Marsh and Assoc., P.A., will not be prevented or delayed by any law, ordinance, easement or other encumbrance and will not require the consent or approval of any third party or governmental agency or other authority other than consents and approvals that *408 the General Partners believe, in their professional judgment, can be obtained within a reasonable period of time. Subject to governmental action, work stoppages, acts of God and other circumstances and conditions beyond the control of the General Partners, of which the General Partners have no knowledge as of the date hereof, completion of construction of the Project will not take more than 11 months from closing under the Purchase Contract and lease-up of the Project will not take more than 18 months from closing under the Purchase Contract.
* * * *
11.4 Governing Law. This Agreement and all matters relating to the organization and existence of the Partnership shall be governed by and construed and enforced in accordance with the laws of the State of Florida. In the event that any Partner shall commence an action with respect to the breach, interpretation or enforcement of this Agreement, or with respect to any matter involving the organization or existence of the Partnership, then the prevailing party or parties in said action shall be entitled to recover from the other party or parties all reasonable costs and expenses of litigation, including reasonable attorneys' fees, in such amount as may be determined by the court having jurisdiction of said action. The remedies of the Partners shall be cumulative and the exercise of any remedy or remedies, whether hereunder or otherwise, shall not exclude any other remedies provided for hereunder or otherwise.
Because Yusem was not individually a partner in Wyncreek, Butler requested that he enter into a Guaranty and Indemnification Agreement, which was duly executed by Yusem. The Guaranty and Indemnification Agreement included the following provisions particularly relevant to this appeal:
8. In addition to his other obligations under the Guaranty, Guarantor also hereby agrees to indemnify, defend, protect and hold [Butler] harmless from and against (a) any and all liability, loss, claims of third parties, costs, damage and expense (including reasonable attorneys' fees) that [Butler] may incur or sustain as a result of or in connection with the actions of HY/Inc. as General Partner under the Limited Partnership Agreement or otherwise under the Contracts or in connection with the Partnership, and (b) any loss of any benefit that would have inured to the benefit of [Butler] had Guarantor been a party to any of the Contracts in place of HY/Inc.
* * * *
13. . . . Guarantor agrees that [Butler], to the extent that he is in the prevailing party in any such action or proceeding, shall be entitled to recover from Guarantor his reasonable attorneys' fees and costs and disbursements of such action or proceeding.
Butler and the Appellants then individually signed a promissory note in the amount of $1,215,000 with First American Bank and Trust to purchase the Wyncreek property (and the partnership secured the loan with a mortgage on the property). The related Contract for Sale and Purchase of the Wyncreek site revealed that closing was scheduled for June 1985 (however, it appears from the closing binders that were admitted as exhibits at trial that the closing did not occur until August 1985). The parties later executed another promissory note in the amount of $2,585,000 (individually guaranteed) for the construction and development of the Wyncreek property (and entered into a written *409 Construction Loan Agreement). The Appellants acted as general contractors for the construction and development of the property.
Despite Appellants' representations to the contrary, Butler eventually discovered that the Wyncreek project was not being completed or leased-up as required under Section 6.4 of the partnership agreement. Butler alleged that these delays were due in part to violations of fiduciary duties by the Appellants, including: disbursements of partnership funds to pay for renovations of Carlton's home; disbursements of partnership funds for other personal uses of Carlton; and failure to keep accurate accounting records, failure to conduct an audit, and refusal to permit Butler to review financial records as required by the terms of the partnership agreement.
Based on this discovery, Butler filed a ten-count complaint against the Appellants. These counts alleged the following: dissolution of Wyncreek Partnership and request for accounting, breach of guaranty (against Yusem), declaratory judgment (against Yusem), foreclosure of partnership lien, breach of contract, fraud, breach of fiduciary duties, conversion, civil theft, and negligent misrepresentation. Many of these counts included requests for attorney's fees.
The Appellants (except Carlton) filed an Answer, Affirmative Defenses and Counterclaims to Butler's complaint, asserting twenty-seven affirmative defenses, none of which sought a set-off or asserted force majeure. The Appellants also alleged fourteen counterclaims against Butler. Carlton filed a separate Answer and Affirmative Defenses to Butler's consolidated complaint. Butler amended his complaint, and the Appellants (except Carlton) filed an amended Answer, Affirmative Defenses and Counterclaims, including only fourteen affirmative defenses, one of which sought a setoff/recoupment based on Butler's recovery against one of his law firms in a malpractice action related to the project and based on the purchase of the Wyncreek property by Butler's brother-in-law, C. David Sammons, following the foreclosure sale in a related FDIC action. Butler amended his complaint one final time to include a count for piercing the corporate veil.
During the early stages of the litigation surrounding Wyncreek, Yusem and H.Y. (Wyncreek), Inc. entered into a Standstill Agreement with Butler. In the agreement, the parties recognized that the loan received from First American Bank and Trust to fund the Wyncreek project had not been repaid as scheduled. Yusem agreed to advance certain sums of money to third parties on Wyncreek's behalf in order to satisfy the loan or hold it in abeyance over the course of the litigation between the parties. Provided that Yusem fulfilled this obligation, Yusem and Butler agreed to split (50/50) the expenses of the Wyncreek development until its disposition, with Butler's obligation capped at $250,000.
At trial, Butler testified regarding the mortgage foreclosure suit for the Wyncreek property, in which the FDIC succeeded First American Bank and Trust. Butler testified that he reached a settlement with the FDIC. Butler agreed to pay $1,720,000 and buy the loan and mortgage, and then arranged to assign the loan and mortgage to his brother-in-law, Sammons (who subsequently purchased the Wyncreek property at a public sale), with the FDIC's approval of the assignment and his financial assistance (with the total purchase price being $3.42 million). Butler also entered an exhibit into evidence tracking the progress of the Wyncreek development which demonstrated that the project was considered 100% complete in September *410 1996. Additionally, Butler submitted binders to the trial court containing invoices for his attorney's fees related to the various civil actions concerning Wyncreek, including documentation related to Akerman Senterfitt.
David Flett, a real estate broker and Wyncreek's property manager, testified regarding the development of the Wyncreek property. Flett testified that Wyncreek was a completed shell project in Fall 1987. However, there were no built-out tenant spaces or tenants at that time (nor in March 1988 when Flett officially became the property manager).
Emanuel Gerstein, an accountant, testified as the Appellants' expert regarding the finances of the partnership. He testified that Yusem paid over $2,000,000 in extensions related to the FDIC action under the standstill agreement. Also, the nature of Butler's confidential malpractice settlement with one of his law firms was discussed during Gerstein's testimony; apparently the $1,000,000 settlement was divided into recoveries of $325,000 for Wyncreek and $675,000 for the other project initiated by the parties. Following this testimony, Butler's counsel agreed during closing argument that the Appellants were entitled to a set-off of approximately $180,000 for the malpractice settlement.
At the conclusion of the bench trial, the trial court entered a written final judgment. Regarding the breach of the Guaranty and Indemnification Agreement count and the declaratory relief count, the trial court ruled that Yusem was liable for Butler's $400,000 investment and jointly and severally liable for attorney's fees.
Regarding the fraud count, the trial court ruled in favor of the Appellants on the fraudulent inducement allegations, stating that Butler could not recover on his fraudulent inducement claim because he failed to exercise due diligence. The trial court found, inter alia, that Butler's lack of experience in development was outweighed by the fact that he was a sophisticated businessman and an experienced lawyer, who was represented by New York counsel, and that Butler sought legal advice at various times including, but not limited to, when he was going to embark upon the Wyncreek investment venture. The trial court also denied recovery on due diligence grounds for the negligent misrepresentation count, one breach of contract claim, and one breach of fiduciary duty claim.
The trial court then addressed the breach of contract count. Regarding whether the agreement was violated because the project was not timely completed, the trial court concluded:
As to the timeliness of completion, § 6.4 provided that construction was to be finished within 11 months of closing of the land purchase contract, and lease-up was to take place within 18 months of closing of the land purchase contract. The closing was on August 2, 1985.
The court finds that the time periods should reasonably have begun when the building permit was obtained in January 1986. Given that beginning date, construction of the project did not miss the 11 month deadline by a significant amount.
The court further found in favor of the defendants on the completion issue, in part "pursuant to the `force majeure' clause in the [partnership agreement], economic circumstances changed after the signing of the [partnership agreement], which caused the failure to profitably lease the project."
Relevant to both the breach of contract and breach of fiduciary duty counts, the trial court concluded that Carlton breached the agreement by taking improper distributions and that H.Y. (Wyncreek)/Yusem *411 breached its fiduciary duties by failing to stop Carlton's improper distributions. The trial court also found that Wyncreek improperly disbursed $38,872.66 in funds during the construction project and overpaid the general partners, as general contractors for the project, in the amount of $65,896.50. As a result of these findings, the trial court entered a judgment of $106,769.16 in favor of Butler and against all the defendants jointly and severally. Because the partnership agreement contained a prevailing party attorney's fees provision, the trial court also entered an award for attorney's fees in the amount of $1,062,500, without prejudgment interest, in favor of Butler and against the defendants jointly and severally.
Regarding the civil theft count, the trial court concluded that there was a list of checks that constituted civil theft by Carlton (under the 1985 version of the statute). The checks benefited Carlton in the total sum of $33,161.87. Carlton repaid $46,499.24, but because damages are trebled in civil theft cases, he was required to repay a total of $99,485.61. As a result, a judgment in favor of Butler and against Carlton was entered for the outstanding sum of $52,986.37, plus interest and attorney's fees in the amount of $942,500.
The trial court next addressed the Appellants' various requests for set-offs. The trial court concluded that Sammons was not Butler's alter ego and denied a set-off on the basis of his acquisition of the Wyncreek property. The trial court concluded that the defendants should be awarded a set-off of $500,000 for Butler's recovery in his malpractice suit, because the trial court believed the evidence was unclear concerning the proportioning of the fees awarded in the settlement between the Wyncreek project and the other project. The trial court concluded that Yusem was entitled to a set-off of $250,000, because Butler never contributed under the standstill agreement despite Yusem's contribution of at least $2,054,945. Finally, the trial court concluded that the defendants were not entitled to a set-off for income tax benefits enjoyed by Butler as a result of his Wyncreek project losses, because the evidence was not clear whether the amounts were solely attributable to Wyncreek losses.
The trial court then turned to the attorney's fees requested by Butler. The trial court concluded that Butler was not entitled to fees for the FDIC litigation (which constitute the majority of fees sought for Akerman Senterfitt) based on the Wrongful Act Doctrine. The trial court also denied attorney's fees related to the malpractice settlement. However, the trial court awarded fees in the amounts of $622,500 and $320,000 for two other firms employed by Butler.
The trial court then summarized the awards set forth in the final judgment. The trial court assessed a total of $1,047,269.16 against the partners jointly and severally, Yusem, and Carlton for improper partnership checks ($38,872.66), overpayment of overhead expenses ($65,896.50), attorney's fees ($320,000), and attorney's fees ($622,500). This judgment was subject to a set-off of $500,000 for Butler's malpractice settlement, making the total recovery $547,269.16. The trial court then explained that Yusem was individually liable for Butler's $400,000 initial investment subject to a set-off of $250,000 based on the standstill agreement and a set-off of $500,000 for Butler's malpractice settlement, making his total liability $697,269.10. Finally, the trial court concluded that Carlton was liable for $547,269.16 plus civil theft damages of $52,986.37, for a total liability of $600,255.53 (plus attorney's fees under the civil theft statute).
*412 Butler filed a motion for rehearing. Butler asserted that rehearing was necessary for reasons common to the issues raised on appeal: inconsistencies in the final judgment (such as awarding him the $400,000 under the agreement, but not awarding him the $1,720,000 incurred in the FDIC settlement or the Akerman Senterfitt attorney's fees), application of the law of due diligence, failure to assess prejudgment interest, application of the doctrine of force majeure, and improper awarding of set-offs ($500,000 based on the legal malpractice settlement and $250,000 based on the standstill agreement). The trial court denied Butler's motion for rehearing, and this appeal and cross-appeal ensued.
Butler raises six issues on cross-appeal. In his first issue, Butler contends that the trial court erred by applying due diligence to defeat his fraud, negligent misrepresentation, breach of fiduciary duty, and breach of contract claims because due diligence was not pleaded as an affirmative defense. It is true that due diligence is an affirmative defense that must be pleaded to avoid waiver, and in this case the Appellants failed to plead due diligence as an affirmative defense. See Louie's Oyster, Inc. v. Villaggio Di Las Olas, Inc., 915 So.2d 220, 223 (Fla. 4th DCA 2005)("Affirmative defenses are waived unless they are pleaded."); Deleo v. Spero, 560 So.2d 426, 426 (Fla. 4th DCA 1990)(lack of due diligence is an affirmative defense). However, a close reading of the trial transcript reveals that the trial court misapplied the term "due diligence" to express its conclusion that Butler did not justifiably rely on representations made by the Appellants. Thus, Butler failed to establish one of the elements of fraud, that is, justifiable reliance on the representations. See Sheen v. Jenkins, 629 So.2d 1033, 1035-1036 (Fla. 4th DCA 1993)("This Court has described the elements of fraud as follows, Sherban v. Richardson, 445 So.2d 1147, 1148 (Fla. 4th DCA 1984):(1) a misrepresentation of material fact; (2)[a] a knowledge of the representor of the misrepresentation, or [b] representations made by the representor without knowledge as to either truth of falsity, or [c] representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof; (3) an intention that the representor induce another to act on it; and (4) resulting injury to the party acting in justifiable reliance on the representation."). Therefore, there is no error as to this issue and we affirm.
In his second issue, Butler asserts that the trial court erred by awarding the appellants set-offs in the amounts of $250,000 for Yusem's contributions under the standstill agreement and $500,000 for Butler's recovery in the malpractice action. Regarding the standstill agreement set-off, we conclude that it was improperly awarded because the Appellants never pleaded this particular set-off as an affirmative defense, instead seeking set-offs only for the malpractice recovery and the acquisition of the Wyncreek property by Sammons following the FDIC action. See Udell v. Udell, 950 So.2d 528, 529 (Fla. 4th DCA 2007)(set-off is an affirmative defense); Louie's Oyster, Inc. v. Villaggio Di Las Olas, Inc., 915 So.2d 220, 223 (Fla. 4th DCA 2005)("Affirmative defenses are waived unless they are pleaded."). Regarding the malpractice settlement set-off, we conclude that the trial court could not award such a set-off in an amount greater than $325,000 based on the apportionment of fees between the two projects in the malpractice settlement, because to do so would be to rewrite a contract expressing the intent of the parties. See Keystone Creations, Inc. v. City of Delray Beach, *413 890 So.2d 1119, 1127 (Fla. 4th DCA 2004)("`it is never the role of the trial court to rewrite a contract . . .'") (citation omitted). However, because Butler agreed to some set-off being awarded for the malpractice recovery, it was not improper for the trial court to award such a set-off in general, but that set-off should be limited to $325,000 or less on remand. Overall, we conclude that the trial court erred by awarding a set-off for the standstill agreement in any amount and a set-off for the malpractice settlement in an amount in excess of $325,000.
In his third issue, Butler contends that the trial court erred by failing to award him damages for the $1.72 million he paid to settle the FDIC suit. We conclude that the trial court erred by not awarding Butler damages in the amount of $1.72 million. Butler became personally liable on the notes and mortgage along with the Appellants in order to purchase and develop the Wyncreek site for the benefit of the partnership. When the partnership failed and the loan was not paid, Butler and the Appellants were all personally liable for the debt that they incurred on behalf of the partnership. Butler addressed his personal liability on behalf of the partnership by entering into a $1.72 million settlement with the FDIC. Both the partnership and Yusem, based on the guaranty, are liable for this settlement paid on their behalf by a limited partner who otherwise would have had only $400,000 at risk for possible recovery as damages. Overall, because Butler paid the $1.72 million FDIC settlement, based on his personal liability, to benefit the partnership, we conclude that the trial court erred by not awarding him that amount in damages.
In his fourth issue, Butler asserts that the trial court erred by failing to award him the Akerman Senterfitt attorney's fees incurred in the FDIC suit and the overall Wyncreek litigation. We conclude that the trial court erred by not awarding Butler these fees. Butler incurred these fees in litigation involving the partnership and is contractually entitled to these fees as the prevailing party under both the partnership agreement and the guaranty. As such, the trial court was without discretion to deny an award of fees, on the basis of the Wrongful Act Doctrine or otherwise, where the award was contractually mandated. See Sumner Group, Inc. v. M.C. Distributec, Inc., 949 So.2d 1205, 1206 (Fla. 4th DCA 2007)(trial court has no discretion to deny an award of contractual attorney's fees where a party is so entitled under the terms of the contract and the circumstances of the case). Furthermore, there is testimony and documentation available in the record to establish the proper amount of an award of attorney's fees incurred in representation by Akerman Senterfitt, and this information can be used to determine the proper amount of an award on remand. Overall, we conclude that the trial court erred by failing to award the Akerman Senterfitt attorney's fees to Butler where they were incurred on behalf of the partnership, he was determined to be the prevailing party in this case, and the fees were recoverable under both the partnership agreement and the guaranty.
In his fifth issue, Butler contends that the trial court erred by denying him an award of prejudgment interest. We conclude that the trial court erred by failing to award Butler at least some prejudgment interest. Because the final judgment liquidates damages awarded to Butler for his out-of-pocket losses, he is entitled to prejudgment interest at the statutory rate from the date of those losses. See Argonaut Ins. Co. v. May Plumbing Co., 474 So.2d 212, 215 (Fla.1985)(holding that *414 there is no discretion in awarding prejudgment interest under the loss theory adopted in Florida, and that "when a verdict liquidates damages on a plaintiff's out-of-pocket, pecuniary losses, plaintiff is entitled, as a matter of law, to prejudgment interest at the statutory rate from the date of that loss"). However, because Butler did not become the prevailing party for purposes of attorney's fees until the entry of the final judgment in which such a finding was made, his entitlement to attorney's fees was not fixed by court determination until that time. See Quality Engineered Installation, Inc. v. Higley S., Inc., 670 So.2d 929, 931 (Fla.1996)(prejudgment interest is to be awarded on attorney's fees as accrued "from the date the entitlement to attorney fees is fixed through agreement, arbitration award, or court determination, even though the amount of the award has not yet been determined"). As a result, he is not entitled to prejudgment interest on the portions of the damages award representing attorney's fees because the date of entitlement and the date of award are the same so there is no intervening time period during which interest accrued. Overall, we conclude that the trial court erred by failing to award prejudgment interest on the damages award except for those portions of the award addressing attorney's fees.
In his sixth and final issue, Butler asserts that the trial court erred by changing the terms of the partnership agreement addressing the construction and lease-up deadlines and then excusing Appellants' untimely lease-up performance based on the doctrine of force majeure. Paragraph 6.4 of the agreement required that construction of the Wyncreek project was to be completed eleven months from the closing date and that lease-up of the project would not take more than eighteen months from the date of closing. In substituting the permit pull date for the closing date to calculate the eleven-month and eighteen-month timeframes, the trial court erred by disregarding the plain language of the agreement. See Keystone Creations, Inc. v. City of Delray Beach, 890 So.2d 1119, 1127 (Fla. 4th DCA 2004)("`it is never the role of the trial court to rewrite a contract . . .'") (citation omitted). Under the correct start date expressed in the contract, which was based on the closing which occurred on August 2, 1985, it is clear that Wyncreek did not meet either the construction completion or lease-up deadlines. Construction completion was to occur within eleven months of closing, or July 1, 1986, and documentation entered into evidence at trial reveals the earliest that the construction could have been considered completed was September 1986. Lease-up was to occur within eighteen months of closing, or February 1, 1987, and Flett's testimony reveals that the development still had no tenants in March 1988. As such, the Appellants breached the contract by failing to meet the construction completion and lease-up deadlines and it was improper for the trial court to rescue them from the consequences of their breach by rewriting the contract. See Beach Resort Hotel Corp. v. Wieder, 79 So.2d 659, 663 (Fla.1955)(en banc)("It is well settled that courts may not rewrite a contract or interfere with the freedom to contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain."). Regarding the application of force majeure to excuse the Appellants' lease-up performance that was untimely even based on the erroneously altered timeline, the trial court erred by employing the doctrine because it was not pleaded as an affirmative defense by the Appellants. See Louie's Oyster, Inc. v. Villaggio Di Las Olas, Inc., 915 So.2d 220, 223 (Fla. 4th DCA 2005)("Affirmative defenses are waived unless they are pleaded."); Raw Materials, Inc. v. Manfred Forberich *415 GMBH & Co., 2004 WL 1535839, at *3 (N.D.Ill.2004)(force majeure is an affirmative defense). On remand, the trial court should consider what (if any) damages should be awarded for these breaches and adjust the total damages award accordingly. Overall, we conclude that the trial court erred by changing the construction and lease-up deadlines set forth in the partnership agreement (so as to conclude that the construction deadline was not breached because it was not missed by a significant amount) and by employing the unpleaded affirmative defense of force majeure to excuse the Appellants' untimely lease-up performance.
In sum, we conclude that the trial court erred by awarding set-offs for the standstill agreement payment and malpractice settlement, failing to award Butler $1.72 million for the FDIC settlement, failing to award Butler his Akerman Senterfitt attorney's fees, failing to award Butler prejudgment interest on the damages award (except for the attorney's fees portions), and altering the construction and lease-up deadlines expressed in the contract while excusing untimely performance based on force majeure. As a result, we reverse and remand these issues for further proceedings consistent with this opinion. We affirm in all other respects. We also note, despite our reversal on some issues and considering all aspects of this case, that the trial court should be commended for doing its best to wrangle a complex and contentious case that had been many years in the making.
Affirmed In Part, Reversed In Part, and Remanded.
GUNTHER, FARMER and MAY, JJ., concur.