970 So.2d 456 (2007)
AMICA MUTUAL INSURANCE COMPANY, Appellant/Cross-Appellee,
v.
Scott DRUMMOND and David Auslander, Appellees/Cross-Appellants.
No. 2D06-5692.
District Court of Appeal of Florida, Second District.
December 7, 2007.
*457 Douglas M. Fraley of Molhem & Fraley, P.A., Tampa, for Appellant/Cross-Appellee.
Mary E. Kestenbaum of Merlin Law Group, P.A., Tampa, for Appellees/Cross-Appellants.
STRINGER, Judge.
AMICA Mutual Insurance Company ("AMICA") seeks review of the final judgment, which declared that AMICA was obligated to pay insureds Scott Drummond and David Auslander Medical Payment benefits ("Med Pay benefits") for treatment occurring prior to October 5, 2004. Drummond and Auslander cross-appeal the partial declaratory judgment in which the court determined that AMICA was not obligated to pay Med Pay benefits for treatment occurring after October 5, 2004. Because Drummond and Auslander refused to perform a condition precedent to AMICA's duty to provide Med Pay benefits, AMICA was not obligated to pay any outstanding Med Pay benefits. Therefore, we reverse the final judgment and affirm the partial declaratory judgment.
Drummond was the driver of an AMICA insured automobile involved in an accident on June 11, 2004. Auslander was a passenger in that vehicle and had his own AMICA policy. Drummond sought Med Pay benefits under his policy, and Auslander sought Med Pay benefits under both policies.
AMICA sought to investigate the accident and injuries to both Drummond and Auslander. Drummond and Auslander, through their attorney, agreed to give sworn statements at their attorney's office on July 23, 2004. However, Drummond and Auslander did not complete the sworn statements. AMICA then elected to exercise *458 its right under the policies to require Drummond and Auslander to submit to Examinations Under Oath ("EUOs").
By letters dated July 23, 2004, directed to Drummond and Auslander's attorney, AMICA requested Drummond and Auslander appear for EUOs on August 3, 2004. The letters referenced "claims arising from the June 11, 2004 accident including PIP and UM claims." Drummond and Auslander's attorney agreed to present his clients for the EUOs, but informed AMICA he had a scheduling conflict. The attorneys rescheduled the EUOs for August 26, 2004. On August 25, 2004, Drummond and Auslander's attorney advised AMICA by letter that his clients would not appear for their scheduled EUOs because they were not pursuing a UM claim and there was no requirement for EUOs for PIP claims. Drummond and Auslander did not appear for EUOs on August 26, 2004. By this time, Auslander had exhausted the Med Pay benefits under his policy; he proceeded with his claim for benefits under Drummond's policy.
On September 17, 2004, AMICA sent counsel for Drummond and Auslander a letter for each insured scheduling EUOs on October 5 and stating, "Please be advised that due to your client's failure to attend his previously scheduled EUO any Med Pay benefits due for treatment occurring after August 26, 2004 will be suspended until he attends the above-requested EUO." On September 29, 2004, AMICA's claims department sent Drummond and Auslander a letter confirming the suspension of their benefits. On October 4, 2004, counsel for Drummond and Auslander informed AMICA that they would not appear for the EUOs. To date, neither Drummond nor Auslander has appeared for an EUO to give testimony regarding the accident.
On November 5, 2004, AMICA filed a complaint for declaratory judgment regarding whether Drummond and Auslander's failure to submit to EUOs relieved AMICA of its duty to pay outstanding Med Pay benefits. The trial court subsequently entered a partial declaratory judgment, finding that AMICA was not obligated to pay Drummond and Auslander Med Pay benefits for treatment occurring after October 5, 2004, due to Drummond and Auslander's failure to appear for the October 5 EUOs. The trial court made the following findings on the record:
[T]he court does find that the Defendants, Scott Drummond and David Auslander, are not entitled to the medical payments benefit under the policy based upon their refusal to submit to the Examination Under Oath as required by the policy, and not withstanding the fact that initially there was some confusion regarding PIP coverage and/or UM claims. But even after that confusion was dispelled by subsequent letters from Amica's counsel making Defendant's aware that the EUO was requested pursuant to the medical payment benefit provision of the policy, and they were given an opportunity to appear in October, it was communicated to Amica that, indeed, they would not be appearing for that.
The court thereafter entered a final judgment on the remaining declaratory judgment issues, finding that AMICA was obligated to pay Med Pay benefits for treatment occurring prior to October 5, 2004.
On direct appeal of the final judgment, AMICA argues that the trial court erred in ruling that it was required to pay Med Pay benefits for treatment occurring prior to October 5, 2004. AMICA argues that Drummond and Auslander materially breached the insurance contract by failing *459 to appear for the October EUOs. Therefore, AMICA argues that it was within its rights in refusing to pay Med Pay benefits for treatment occurring after August 26, 2004.
Because this case involves a question of contract interpretation, our review is conducted de novo. Am. Strategic Ins. Co. v. Lucas-Solomon, 927 So.2d 184, 186 (Fla. 2d DCA 2006). There is no dispute that Drummond and Auslander had a duty to submit to EUOs under the insurance policies. The question is whether Drummond and Auslander's failure to appear for the scheduled EUOs relieved AMICA of its duty to provide Med Pay benefits coverage prior to the date the trial court found the breach occurred, which was October 5, 2004.
"An insured's refusal to comply with a demand for an examination under oath is a willful and material breach of an insurance contract which precludes the insured from recovery under the policy." Goldman v. State Farm Fire Gen. Ins. Co., 660 So.2d 300, 303 (Fla. 4th DCA 1995); accord S. Home Ins. Co. v. Putnal, 57 Fla. 199, 49 So. 922, 932 (1909); Stringer v. Fireman's Fund Ins. Co., 622 So.2d 145, 146 (Fla. 3d DCA 1993). The policy at issue in Goldman provided that "`no action shall be brought unless there has been compliance with the policy provisions.'" 660 So.2d at 301. The dispositive issue was whether the provision requiring submission to an EUO constituted a condition precedent, which must be performed to trigger the insured's rights under the policy, or a condition subsequent. Id. at 303 n. 5. The Fourth District decided that the provision constituted a condition precedent and held that the trial court did not err in granting summary judgment in favor of the insurer based on the insured's failure to submit to an EUO. Id. at 306. Thus, the insured was foreclosed from bringing suit against the insurer to compel the insurer to pay benefits under the policy. See also Nationwide Ins. Co. v. Nilsen, 745 So.2d 264, 267 (Ala.1998) ("Nilsen's policy required him to submit to an examination under oath in order to recover under the contract. Therefore, in order to recover on his claim alleging breach of contract, Nilsen was required to first comply with the condition precedent that he submit to an examination under oath as reasonably required by Nationwide.").
In this case, the insurance policy contains an express provision stating that AMICA has "no duty to provide coverage . . . unless there has been full compliance" with the EUO requirement. The policy provides, in pertinent part, as follows:
PART EDUTIES AFTER AN ACCIDENT OR LOSS
We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.
B. A person seeking any coverage must:
1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
3. Submit, as often as we reasonably require:
a. To physical exams by physicians we select. We will pay for these exams.

*460 b. To examination under oath and subscribe the same.

(Emphasis added.)
Thus, Drummond and Auslander's failure to submit to the EUOs was a material breach of a condition precedent to AMICA's duty to provide coverage under the policy. Because the condition precedent was never met, AMICA was within its rights in refusing to pay Med Pay benefits for treatment occurring after August 26, 2004. Therefore, the trial court erred in determining that AMICA was obligated to pay Drummond and Auslander Med Pay benefits for treatment occurring prior to October 5, 2004.
Drummond and Auslander argue that AMICA has waived any denial of benefits prior to the October 5, 2004, breach by paying some benefits before it requested the EUOs. As AMICA argues in reply, Drummond and Auslander did not raise this waiver issue in their pleadings or in the trial court below. Therefore, the issue is not preserved for our review. See Louie's Oyster, Inc. v. Villaggio Di Las Olas, Inc., 915 So.2d 220, 223 (Fla. 4th DCA 2005).
On cross-appeal, Drummond and Auslander argue that AMICA breached the contract first by suspending their benefits on September 29, 2004. AMICA argues that it did not breach any contractual provisions by suspending benefits until Drummond and Auslander submitted to the EUOs as requested. AMICA's argument is correct for three reasons.
First, the insurance policy does not provide any time certain for AMICA to investigate Med Pay claims or provide Med Pay benefits. Second, AMICA did not state that it was refusing to pay Med Pay benefits, but that it was suspending benefits until Drummond and Auslander submitted to EUOs. See Nilsen, 745 So.2d at 268 (rejecting argument that insurer breached by informing insured that it would not make any more payments under the policy until the insured complied with his duty to supply expense receipts so the claim could be investigated). Third, as set forth previously, the submission to EUOs was a condition precedent to AMICA's duty to provide coverage.
Because Drummond and Auslander refused to perform a condition precedent to AMICA's duty to provide coverage, AMICA had no duty to provide Med Pay benefits for any claims pending on the insurance policy. Accordingly, the trial court erred in determining that AMICA had a duty to pay Med Pay benefits as set forth in the final judgment but did not err in determining that AMICA had no duty to pay benefits as set forth in the partial declaratory judgment. We reverse the final judgment and affirm the partial declaratory judgment. We remand with directions for the court to enter final judgment in favor of AMICA.
Affirmed in part; reversed in part; and remanded.
ALTENBERND, J., and BAILEY, JENNIFER D., Associate Judge, Concur.